1   Paul A. Conant, 012667
    **CONANT LAW FIRM, PLC**
2   2398 East Camelback Road #925
    Phoenix, Arizona 85016-9002
3   Telephone: 602.508.9010
    Facsimile:  602.508.9015
4   Email: docket@conantlawfirm.com
        *Attorneys for Plaintiffs*
5

6               **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8   Harvest Health & Recreation Inc., a British        Case No.
9   Columbia, Canada corporation; Harvest
    Enterprises, Inc., a Delaware corporation;             **COMPLAINT**
10  Harvest of California LLC, a California            **(PETITION TO COMPEL**
    limited liability company; Harvest          **ARBITRATION UNDER FEDERAL**
11  California Acquisition Corp., a Delaware            **ARBITRATION ACT)**
    corporation;
12
                Plaintiffs,
13
            vs.
14
    Falcon International, Corp, a Delaware
15  corporation; James Kunevicius, an
    individual; Edlin Kim, an individual;
16  Falcon California, Inc., a Delaware
    corporation; Falcon Brands, Inc. a
17  Delaware corporation; Coastal Harvest II,
    LLC, a California limited liability
18  company; First Canyon Holdings, LLC, a
    Delaware limited liability company; G1
19  Perez, LLC, a Delaware limited liability
    company; V1 Perez, LLC, a Delaware
20  limited liability company; Industrial Court
    L11, LLC, a Delaware limited liability
21  company; A1 Canyon, LLC, a Delaware
    limited liability company; B1 Canyon,
22  LLC, a Delaware limited liability company;
    C1 Canyon, LLC, a Delaware limited
23  liability company; D1 Canyon, LLC, a
    Delaware limited liability company; E1
24

25                                    -1-
26

Canyon, LLC, a Delaware limited liability company; Industrial Court L5, LLC, a Delaware limited liability company; Industrial Court L6, LLC, a Delaware limited liability company; Kane Concepts, LLC, a Delaware limited liability company; MK Point, LLC, a Delaware limited liability company; Cannoisseur Capital, LLC, a Florida limited liability company; BAM668, LLC, a California limited liability company; Rhino Group, LLC, a Delaware limited liability company; Grey Ghost Services, LLC, a Delaware limited liability company; Betterworld Ventures, LLC, a California limited liability company; Swoish Family Trust, an entity; Albert Kim, an individual; John "Johnny" Nasori, an individual; Noah Novello, an individual; David Mitchell, an individual; Brian Brown, an individual; Danielle Brown, an individual,

Defendants.

## NATURE OF ACTION

Pursuant to the Federal Arbitration Act, 9 U.S.C.  §§ 1-16 ("FAA"), Plaintiffs seek an order compelling Defendants to arbitrate all claims and issues set forth herein, including termination and rescission of the Merger Agreement between Harvest and Defendant Falcon on grounds including that, even though Harvest has fully performed all of its legal obligations under the Merger Agreement as of this date, Falcon has been unable and unwilling to: (1) produce auditable financial information or records concerning its business operations and revenue despite repeated requests by Harvest for such records and an obligation by Falcon to do so (as a publicly traded company Harvest cannot rely on the preliminary financial data originally provided by Falcon which Harvest has been unable to receive Falcon's cooperation

to substantiate); (2) rebut recently revealed evidence that it has transported marijuana across state lines, and failed to disclose that to Harvest as required by due diligence obligations; (3) rebut recently revealed evidence that it has failed to comply with California state law concerning the regulation of the sale of marijuana, and failed to disclose that to Harvest as required by its due diligence obligations. Falcon's reckless business practices have also threatened to put Harvest at risk of being named as a defendant, along with Falcon, in a whistleblower lawsuit in California, if it were to proceed to closing the planned merger with Falcon.  As part of Harvest's performance prior to the recent revelations and Falcon's inability or refusal to provide financial information to substantiate its activities, and Falcon's failure and refusal to disclose key details of its business practices, Harvest paid Falcon's control persons $4,100,000.00 personally for assets they personally sold to Harvest separate from Falcon, and further advanced over $47,000,000.00 in cash and equipment (*e.g.,* processing, manufacturing and packaging equipment and IT equipment) to Falcon. Despite Harvest having paid over $50,000,000.00 in cash and in-kind advances to Falcon and its principles, they are unhappy with the deal they struck with Harvest, and have been attempting to manufacture ways to avoid Falcon's obligations under the Merger Agreement. Given what Harvest now knows and believes about Falcon's business practices, and given other conduct by Falcon and its control persons described more fully below, and applicable law, Harvest is entitled to terminate and rescind the Merger Agreement and seek and return and recovery of all monies and things of value provided to Falcon and its control persons to date, in arbitration. Because Falcon has been, on information and belief, harboring a dispute with Harvest of which it failed to seek resolution under mandatory language of the Merger Agreement, Harvest is entitled to seek an order compelling arbitration now.

1    This Complaint and Petition to Compel arbitration seeks to place all disputes herein

2  and between the parties into arbitration, pursuant to the Parties' Agreement, where Harvest

3  will: (1) seek restitution damages and other relief for the return of all monies and consideration

4  provided to Falcon, and to put Harvest in the same financial position as it was *vis-à-vis* Falcon

5  *ante* the Parties' Agreements; (2) seek appointment of a Receiver for all of Falcon's business

6  and assets and to operate same in compliance with both state and federal law, pending

7  payment in full to Plaintiffs of the monies, damages and other relief to which they are entitles.

8    Plaintiffs Harvest Health & Recreation Inc., a British Columbia, Canada corporation,

9  ("Harvest"), Harvest Enterprises, Inc., a Delaware corporation ("Harvest Enterprises"),

10  Harvest of California LLC, a California limited liability company ("Harvest of California"),

11  Harvest California Acquisition Corp., a Delaware corporation ("Harvest Acquisition") alleges

12  as follows:

13    **THE PARTIES**

14    1.    Plaintiff Harvest Health & Recreation Inc. is a British Columbia, Canada

15  corporation in good standing, with its principal place of business in Tempe, Arizona, and is a

16  party to the transactions contemplated by the Merger Agreement alleged herein.

17    2.    Plaintiff Harvest Enterprises, Inc. is a Delaware corporation in good standing

18  and a party to the transactions contemplated by the Merger Agreement alleged herein.

19    3.    Plaintiff Harvest of California LLC is a California limited liability company in

20  good standing and a party to certain agreements as alleged herein.

21    4.    Plaintiff Harvest California Acquisition Corp. is a Delaware corporation in good

22  standing, with its principal place of business in Tempe, Arizona.

23    5.    Defendant Falcon International, Corp ("Falcon") is a Delaware corporation in

24  good standing, with its principal place of business in California.

25

26    -4-

6.    Defendant James Kunevicius is an individual and resident of California.

7.    Defendant Edlin Kim is an individual and resident of California.

8.    Defendant Falcon California, Inc. is a Delaware corporation in good standing, with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

9.    Defendant Falcon Brands, Inc. is a Delaware corporation in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant

10.    Defendant Coastal Harvest II, LLC is a California limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

11.    Defendant First Canyon Holdings, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

12.    Defendant V1 Perez, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

13.    Defendant Industrial Court L11, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

14.    Defendant A1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

15.     Defendant B1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

16.     Defendant C1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

17.     Defendant D1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

18.     Defendant E1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

19.     Defendant F1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

20.     Defendant Industrial Court L5, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

21.     Defendant Industrial Court L6, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant.

22.     Defendant Kane Concepts, LLC is a Delaware limited liability company in good standing, with its principal place of business in California. Kane Concepts, LLC is owned and controlled by James Kunevicius.

23.     Defendant MK Point, LLC is a Delaware limited liability company in good standing, with its principal place of business in California. MK Point, LLC is owned and controlled by Edlin Kim.

24.     Defendant Cannoissuer Capital, LLC is a Florida limited liability company in good standing, with its principal place of business in Miami, Florida.

25.     Defendant BAM668, LLC is a California limited liability company in good standing, with its principal place of business in Santa Ana, California.

26.     Defendant Rhino Group, LLC is a Delaware limited liability company in good standing, with its principal place of business in Delaware.

27.     Defendant Grey Ghost Services, LLC is a Delaware limited liability company in good standing, with its principal place of business in Anaheim, California.

28.     Defendant Betterworld Ventures, LLC is a California limited liability company in good standing, with its principal place of business in Temecula, California.

29.     Defendant Swoish Family Trust is family trust with its principal place of domicile and/or business in California.

30.     Defendant Albert Kim is an individual whose domicile is in California and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon.

31.     Defendant John "Johnny" Nasori is an individual whose domicile is in California and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon.

32.     Defendant Noah Novello is an individual whose domicile is in California and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon.

33.     Defendant David Mitchell is an individual whose domicile is presently unknown, but is believed to be California, and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon.

34.     Defendant Brian Brown is an individual whose domicile is presently unknown, but is believed to be California, and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon.

35.     Defendant Danielle Brown is an individual whose domicile is presently unknown, but is believed to be in California and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon.

## THE MERGER AGREEMENT and RELATED TRANSACTIONS

36.     A Merger Agreement dated February 14, 2019 was entered into by, between and/or among Plaintiff Harvest and Harvest Acquisition and Falcon and certain other Defendants as Shareholders of Falcon (the "Merger Agreement").

37.     Among other things, the Merger Agreement includes within it an arbitration clause at Section 9.10, severable or separable from the Merger Agreement itself, in accord with the "doctrine of separability" announced by the United States Supreme Court in *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

38.     Under the "doctrine of separability", a party seeking to rescind a contract containing an arbitration clause does not, merely by seeking rescission or termination of that main contract, also seek rescission or termination of the arbitration clause, which clause remains in full force and effect even if the main contract is rescinded or terminated.

39.     In connection with the Merger Agreement, a number of other agreements were executed by and among various parties.

40.     Promissory notes were made by Falcon and certain Note Debtor Defendants, payable to Harvest Enterprises, Inc.; specifically:

        a.   Falcon entered into a February 15, 2019 Promissory Note in the amount of $10,000,000.00 payable to Harvest Enterprises to memorialize amounts previously advanced by Harvest Enterprises to Falcon (the "2/15 Note"); and,

        b.   Falcon and Note Debtor Defendants Falcon California, Inc. and Falcon Brands, Inc. entered into a February 14, 2019 Promissory Note in the amount of $14,499,000.00 payable to Harvest Enterprises to memorialize amounts previously advanced by Harvest Enterprises to Falcon (the "2/14 Note").

41.     The Merger Agreement was amended by the First Amendment to Agreement and Plan of Merger and Reorganization, effective as of June 7, 2019 (the "Amendment").

42.     In connection with the Amendment, Falcon and all Note Debtor Defendants entered into a June 7, 2019 Secured Promissory Note in the amount of $40,353,881.12 payable to Harvest Enterprises ("6/7 Note").  Harvest Enterprises funded $23,353,881.12 under the 6/7 Note in accordance with its terms and as agreed to by the parties to such note.

43.     The above-referenced promissory notes may be referred to herein, collectively, from time to time, as the Promissory Notes.

44.     Substantially contemporaneously with the Amendment, Defendants James Kunevicius and Edlin Kim negotiated a separate but related transaction with Harvest of California (the "Control Person Transaction") through which they sold to Harvest of California 100% of the membership interests in Industrial Court L8, LLC ("L8") and

Industrial Court L10, LLC ("L10") *via* their personally-owned membership interests in two limited companies called Elemental Concepts, LLC, a North Carolina limited liability company (owned by Defendant James Kunevicius) and Compass Point, LLC, a Delaware limited liability company (owned by Defendant Edlin Kim).  The purchase price for the sale of L8 and L10 to Harvest of California was an aggregate of $4,100,000.00, with 50% of that purchase price to go to James Kunevicius and 50% to go to Edlin Kim, pursuant to an (a) Assignment Agreement dated June 7, 2019 with no specified state or federal court venue, (b) a Membership Interest Purchase Agreement dated as of June 7, 2019 ("MIPA") with no specified state or federal court venue; and, (c) an "Undertaking" dated June 7, 2019 with no specified state or federal court venue. The MIPA specifies that disputes relating to the Control Person Transaction are to be arbitrated with the American Arbitration Association.

45.     All of the above-referenced agreements were negotiated in substantial part in Arizona, and call for substantial performance in Arizona.

## JURISDICTION AND VENUE

46.     As permitted by 9 U.S.C. §4, because but for the arbitration agreement alleged herein, diversity jurisdiction would be proper under 28 U.S.C. § 1332 since Plaintiff Harvest is a citizen of a different jurisdiction than that of all Defendants and the amount in controversy is substantially in excess of $75,000, this United States District Court has jurisdiction to rule on and determine Plaintiff Harvest's Petition to Compel Arbitration.

47.     Further, Section 9.11(b) of the Merger Agreement states that "any legal suit, action or proceedings arising out of or based upon this Agreement, the other transaction documents or contemplated transactions may be instituted in the federal courts of the United States of America or the courts of the State of Delaware, in each case located in Maricopa

1   County, Arizona, and each party irrevocably submits to the personal jurisdiction of such

2   courts in any such suit, action or proceeding."

3       48.     Contractually, the venue for any disputes concerning any of the Promissory

4   Notes alleged herein above is within Maricopa County, Arizona, and such disputes are subject

5   to arbitration as well, pursuant to principles of contract and agency law.

6       49.     Disputes arising under the Control Person Agreement are subject to arbitration

7   as well, as are the parties to the Control Person Agreement, under principles of contract and

8   agency law.

9       50.     Venue is proper in the United States District Court for the District of Arizona

10  pursuant to 28 U.S.C. § 1391(b), Section 9.11(b) of the Merger Agreement, and 9 U.S.C. §4.

11  <u>**GENERAL ALLEGATIONS**</u>

12  **A.     Invocation of the Federal Arbitration Act to Compel Arbitration.**

13      51.     Defendants who or which are signatories are bound by Section 9.10 of the

14  Merger Agreement, which requires, at Section 9.10 (a), the following action: "If there is any

15  dispute or controversy relating to this Agreement or any of the Contemplated Transactions

16  (each, a "*Dispute*"), such Dispute shall be resolved in accordance with this Section 9.10

17  provided that any Disputes relating to any tax Return shall be resolved as set forth in Section

18  5.06(c)." No Dispute reference herein is subject to Section 5.06(c).

19      52.     For some period of time greater than five days before October 30, 2019,

20  Defendants who or which are signatories to the Merger Agreement claimed a dispute or

21  controversy relating to the Merger Agreement, and or any of the Contemplated Transactions,

22  on information and belief.

23      53.     During that time, Defendants who or which are signatories to the Merger

24  Agreement nonetheless failed, neglected or refused to arbitrate under a written agreement by

25

26                                              -11-

failing to issue a Notice of Dispute in accord with Section 9.10 of the Merger Agreement, and by otherwise failing resolve the dispute or controversy in accord with Section 9.10 of the Merger Agreement.

54.    Plaintiff Harvest is aggrieved by such failure, neglect or refusal.

55.    The FAA states, at 9 U.S.C. §4, as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the

1
2

parties to proceed with the arbitration in accordance with the terms thereof.

3   56.   Five days' notice will be provided to Defendants in accord with 9 U.S.C. §4 and

4   Section 9.10(b) of the Merger Agreement, this Complaint and Petition to Compel Arbitration

5   is and shall also be Plaintiff Harvest's five day Notice of Dispute thereunder, and the same

6   shall be served in the manner provided in the Federal Rules of Civil Procedure. Plaintiff

7   Harvest petitions and moves for an order compelling arbitration in accord with the foregoing

8   cited arbitration clause and authorities. This is Harvest's mandatory Notice of Dispute.

9   57.   The arbitration clause in the Merger Agreement, as amended, states as follows

10   at Section 9.10(c):

11   Any arbitration hereunder shall be conducted in accordance with
the rules of the American Arbitration Association then in effect.
12   The Company [Falcon] and the Parent [Harvest] shall each select
one arbitrator, and the two arbitrators so selected shall select a
13   third arbitrator, and the three arbitrators shall resolve the Dispute.
The arbitrators will be instructed to prepare in writing as promptly
14   as practicable, and provide to the Parent and the Company
Stockholders, such arbitrators' determination, including factual
15   findings and the reasons on which the determination was based.
The decision of the arbitrators will be final, binding and
16   conclusive and will not be subject to review or appeal and may be
enforced in any court having jurisdiction over the Parties. Each
17   party shall initially pay its own costs, feels and expenses
(including, without limitation, for counsel, expert and
18   presentation of proof) in connection with any arbitration or other
action or proceeding brought under this Section 9.10, and the fees
19   of the arbitrators shall be share[d] equally, provided, however,
that the arbitrators shall have the power to award costs and
20   expenses in a different proportion.
21

22   58.   Harvest Enterprises and the Note Debtor Defendants are subject to the

23   arbitration clause in the Merger Agreement and Harvest Enterprises petitions and moves for

24
25                                          -13-
26

an order compelling arbitration of the disputes arising under the Promissory Notes, and in connection with the Merger Agreement, as alleged herein.

59.     Harvest of California is entitled to arbitration as against Defendants James Kunevicius and Edlin Kim for the Control Person Transaction, and petitions and moves for an order compelling arbitration of the disputes concerning the Control Person Transaction, as alleged herein, including its exercise of the Purchaser Put Option as alleged herein below.

**B.     Notice of Dispute Concerning Disputes Plaintiffs Seek to Have Compelled to Arbitration if not Resolved Within Five Business Days.**

60.     Like many other similarly-situated companies whose underlying operations relate to the state-legalized sale of marijuana or cannabis, and occur in substantial part in the United States, Harvest is a public company whose stock trades principally on the Canadian Securities Exchange and the OTCQX tier of the U.S. OTC Markets.

61.     The Merger Agreement states that the consideration to be paid is, *inter alia,* $155,000,000.00 in Multiple Voting Shares of stock of Plaintiff Harvest, which trades on, *inter alia*, the Canadian Securities Exchange, with the number of Multiple Voting Shares to be issued on the Closing Date to be determined by contractually agreed-upon formulae set forth therein.

62.     While the Merger Agreement was executed by the parties as of February 14, 2019, it was not structured to close until after the occurrence of numerous events and actions, which might conceivably take many months, including potentially up to a year or more.

63.     The Merger Agreement has not closed, to date.

64.     So-called "Hart Scott Rodino", or "HSR" review of potential merger transactions by the United States Department of Justice is commonplace.

65.     The Merger Agreement was subject to almost immediate HSR review, which has the practical effect to barring a proposed merger from closing until after the government's HSR review is completed.

66.     But for the HSR review experienced in connection with the Merger Agreement, it was Harvest's belief and expectation that the transactions contemplated by the Merger Agreement would close quickly.

67.     The initiation of HSR review by the government caused the closing not to occur quickly.

68.     After the Merger Agreement was executed as of February 14, 2019, and beginning in about March and April 2019, the trading prices of publicly-traded stocks in the marijuana company sector began to recede, as did Harvest's.

69.     A general representation of the industry-wide trend in that regard is reflected in the graphic below, generated by the *BI Global Cannabis Index* for the relevant market sector:



70.     The Merger Agreement contained no provisions or language which would allow Defendants to back out and not proceed to Closing just because of Harvest's stock price changes, including of the type depicted in the graphic above.

71.     Nonetheless, as publicly-traded marijuana company stock prices, and Harvest's, began to recede in the general manner depicted in the trend shown in the graphic above, Defendants began to engage in conduct which is now questioned in this Petition, Complaint, and Notice of Dispute, as summarized herein below.

72.     Initially, Defendants James Kunevicius and Edlin Kim reacted to the stock price trend referenced above by seeking to renegotiate the Merger Agreement resulting in the June 7, 2019 Amendment.

73.     The June 7, 2019 Amendment increased the stock consideration due under the Merger Agreement to $240,000,000.00.

74.     Defendants James Kunevicius and Edlin Kim also negotiated the June 7, 2019 Control Person Transaction, providing for them to personally split a payment of $4,100,000 without any apparent value or consideration to be realized by the non-controlling shareholders of Falcon.

75.     By June 7, 2019, the Merger Agreement, Amendment, Promissory Notes and the Control Person Transaction (collectively, "the Parties' Agreements") together provided for lucrative consideration to be paid to Defendants James Kunevicius and Edlin Kim and entities they owned or controlled.

76.     Pursuant to the Parties' Agreements, Plaintiffs collectively provided substantial consideration to Defendants, which they received and kept, including in-kind consideration and draw-downs on loans pending Closing, to be used for specific purposes prior to Closing of the Merger Agreement as amended.

77.     The Control Person Transaction actually closed, resulting in the payment to James Kunevicius and Edlin Kim of $4,100,000.00 in cash consideration.

78.     While Defendants James Kunevicius and Edlin Kim required the execution of documents reflecting the Control Person Transaction as an effective condition of the Amendment, calling for Harvest of California to purchase their interests in two non-operational limited liability companies with California marketplace processing licenses, Plaintiffs now question whether Defendants James Kunevicius and Edlin Kim adequately disclosed the terms of the Control Person Transaction to all other defendants, and may investigate and take further action on that issue.

79.     Harvest of California would not have entered into the Control Person Transaction with Defendants James Kunevicius and Edlin Kim had it not believed that the Merger Agreement would move forward to closing, and that Defendants James Kunevicius and Edlin Kim were also committed to moving forward to closing, and would cause Falcon to comply with its obligations under the Merger Agreement, as amended, and refrain from withholding vital information which would give rise to a Material Adverse Effect (as that term is defined in the Merger Agreement), and/or repudiating the Merger Agreement.

80.     During a period of time in August and September 2019, when Harvest was engaged in discussions with Falcon about Falcon attempting to rationalize its's use and timing of the loan proceeds, its business operations, and reasonable efforts to fulfill its obligations set forth in the Merger Agreement prior to Closing, Falcon instructed its lawyer named Sander Zagzebski to issue a "Notice of Breach and Pending Parent Default" dated September 5, 2019 (the "Zagzebski letter")  stating, *inter alia*, that Falcon wanted certain monies from Harvest, and that if it did not comply, Harvest would be in default under the Merger Agreement.

-17-

81.     By that time, Harvest had already advanced loans to Falcon in the total amount of $47,852,881.12 as required under the terms of the 2/14 Note, the 2/15 Note and the 6/7 Note and, while the advances under the 6/7 Note were not funded on the exact schedule Falcon specified in the Zagzebski letter, Falcon received and accepted all loan advances, and did not return any of those monies or, for that matter, any of the consideration provided to it by Harvest or any of the Plaintiffs, or any of the consideration provided by any of the Plaintiffs to or for the benefit of any of the Defendants.

82.     Knowing of Harvest's view that it was not in default or breach under the Merger Agreement, Falcon also did not provide Harvest with any required Notice of Dispute concerning either the matter of the monies addressed in the Zagzebski letter, any action it was considering or might consider in follow up to the Zagzebski letter, or any issue of any type under the Merger Agreement, as amended.

83.     After Falcon received all of the monies referenced above, Falcon appeared to be working forward with Harvest to a Closing of the Merger Agreement, as amended.

84.     On September 24, 2019, Harvest and Falcon both certified "substantial compliance" with a common legal requirement relating to federal antitrust law jurisprudence under HSR rules, a so-called "Request for Additional Information and Documentary Materials issued by the United States Department of Justice" regarding Harvest's proposed acquisition of Falcon by merger.

85.     As announced, the certification of substantial compliance commenced a 30 day waiting period, after which the HSR-related delay which had been in effect since at or about the time of the announcement of the Merger Agreement, Harvest and Falcon would be free to close their planned merger transaction, meaning that the Closing could occur on or after

October 23, 2019 unless the United States Department of Justice raised federal antitrust law concerns under HSR rules in a specific manner.

86.     Harvest did not expect the United States Department of Justice to raise any HSR concerns after expiration of the waiting period nor, on information and belief, did Falcon.

87.     While Falcon appeared to continue to work with Harvest toward Closing after the HSR substantial compliance certification was completed and the 30 day waiting period began, Falcon had ignored providing financial information to Harvest which it had been requesting regularly for a number of weeks, and which was necessary for Closing.

88.     As more time passed and October 23, 2019 approached with no responses from Falcon to its requests for financial information, Harvest wrote to Falcon on October 16, 2019, at its official address for receipt of notices under the Merger Agreement.

89.     The October 16, 2019 letter stated "we are a short way from completing the merger and are committed to working with your finance and operational teams to complete the needed financial information and request for information outlined in this letter", and further expressed concerns about the status of Falcon's books and records, its financial disclosures and about early, emerging information about Falcon being presented by a whistleblower that appeared potentially troubling.

90.     Rather than responding substantively to Harvest's October 16, 2019 letter, Falcon instead negotiated for a "standstill agreement" with Harvest, which was ultimately signed as of October 30, 2019 ("Standstill Agreement").

91.     Effects of the October 30, 2019 Standstill Agreement included that, during the 30 day "standstill period":

　　　　　a.  Harvest was prevented from declaring Falcon to be in breach or default;

b.  Falcon would not have to respond to Harvest's October 16, 2019 letter seeking financial information and more details about the potential whistleblower's evidence; and,

c.  Falcon could -- without disclosing to Harvest the financial information it had requested in the October 16, 2019 letter -- seek debt financing from some other source, besides Harvest.

92.     Nothing in the Standstill Agreement provided for progress towards a Closing to be halted.

93.     Into November 2019, Harvest officials continued to request financial and other information from Falcon as contemplated under the Merger Agreement and important for the Closing.

94.     Falcon provided none of the financial or other information important for Closing that Harvest requested from it in September, October and November 2019.

95.     As the Standstill Agreement was scheduled to end, Falcon instead negotiated an extension of the Standstill Agreement to January 5, 2020, to which Harvest agreed.

96.     During the standstill period, as extended, Harvest representatives have met for business meetings with Falcon personnel at a marijuana business convention to discuss the status of the Merger Agreement.

97.     The business meetings at the convention were non-productive, with one Falcon representative (Edlin Kim) appearing at the meeting with visibly large amounts of cash in his front pocket and back pocket and in a bag, and wearing what appeared to be many tens of thousands of dollars in men's jewelry made of gold, and with both Falcon representatives (Edlin Kim and James Kunevicius) expressing no interest in doing any work to move the planned transaction with Harvest forward and, instead, stating openly that Falcon would not

close the Merger Agreement, as amended, due exclusively to the decline in Harvest's stock price.

98.     Also during the standstill period, as extended, Harvest has additionally learned more information about Falcon which has led it to reasonably believe that Falcon cannot close the transactions contemplated by the Merger Agreement, as amended, without breaching its terms because Harvest is informed and believes that:

  a.  Falcon has misrepresented to Harvest that it had no undisclosed liabilities;

  b.  Falcon has misrepresented to Harvest that it had complied and was complying with all Laws applicable to its business other than any noncompliance which would not result in a Material Adverse Effect (as those capitalized terms are defined under the Merger Agreement, as amended);

  c.  Falcon misrepresented to Harvest that it had not made any untrue statement of material fact in Merger Agreement representations and warranties or statements in Disclosure Schedules; and,

  d.  Falcon misrepresented to Harvest that its Interim Balance Sheet fairly presented its financial condition within applicable accounting categories within 5% margins.

99.     Harvest is informed and believes that the above-referenced misrepresentations constitute false representations of fact, were known to be false or were made with reckless indifference to the truth, were made to induce Harvest to act or refrain from acting, Harvest's action or inaction was taken in justifiable reliance upon the misrepresentations, and Harvest has suffered damage as a result of its reliance.

-21-

100.    Specifically, evidence exists that Falcon was knowingly engaged in a pattern of ongoing violations of law and regulations governing its conduct as a marijuana/cannabis business, on information and belief, including (a) providing marijuana/cannabis in violation of California Bureau of Cannabis Control ("CBCC") regulations and (b) interstate transportation of marijuana/cannabis before the Merger Agreement was executed, and (c) that it engaged in ongoing CBCC regulation violations after the Merger Agreement was executed.

101.    Falcon's transportation of marijuana/cannabis across state lines as alleged above constitutes a Material Adverse Effect, an undisclosed liability, and renders material statements of fact made by Falcon in the Merger Agreement untrue.

102.    Falcon's prior and ongoing violations of CBCC regulations as alleged above constitute a Material Adverse Effect, an undisclosed liability, and renders material statements of fact made by Falcon in the Merger Agreement untrue.

103.    Further, evidence exists that Falcon's Interim Balance Sheet, on information and belief, did not fairly present its financial condition within applicable accounting categories within 5% margins, including that Falcon has remained unable or unwilling to provide documentation indicating that its books and records have been properly maintained, despite previous and repeated written requests by Harvest for such information.

104.    In addition, Harvest believes that Falcon erroneously harbors a contention that it is not estopped from asserting, or barred by laches from asserting, the purported validity of the Zagzebski letter as a basis for claiming to terminate the Merger Agreement, as amended, and seek to keep for itself, and not repay, the consideration which all Defendants have received to date from Plaintiffs, or any of them.

105.   Based on the foregoing, Harvest intends to pursue in an American Arbitration Association ("AAA") arbitration proceeding, as provided in the Merger Agreement, as amended, at least the following claims:

    a.   Rescission and/or termination of the Merger Agreement, as amended, effective immediately, and all of the other related agreements alleged herein above, including any and all: (i) employment agreements; (ii) services agreements; (iii) the Control Person Transaction; (iv) and/or any other contract, obligation or agreement entered into, made, or which has arises as a result of the Merger Agreement, as amended;

    b.   An award of damages from Defendants, and each of them, including restitution damages, including any and all monies or in-kind payments advanced on any Promissory Note to Falcon or any Note Debtor Defendant, and to reverse and restore to the proper Plaintiff any and all assets, properties, monies or other rights restorable as restitution, damages or other like relief, or any other relief proper at law or in equity;

    c.   Confirmation, as needed, that all Defendants are bound to arbitrate the disputes summarized herein under contractual arbitration clauses, the Federal Arbitration Act, and/or principles of contract and agency law, including equitable estoppel and third party beneficiary law, and the conduct of all Defendants in embracing and relying upon and making assertions under, direct or otherwise, the Parties Agreements containing the obligation to arbitrate;

    d.   As to the Control Person Transaction, to confirm and/or effectuate the Purchaser Put Option set forth in Section 8.2(a) of the MIPA, such that

Defendants James Kunevicius and Edlin Kim repay to Harvest of California all of the consideration paid in connection with that transaction, with this constituting the notice of exercise of the "Purchaser Put Option" provided for therein, given that, on information and belief, Defendants James Kunevicius and Edlin Kim contend that they are entitled to keep the $4,100,000 that they were paid, and will decline to repay it;

e.  For a declaration that, to the extent Falcon seeks to rely to the Zagzebski letter as support for any claim of right, that it is estopped from doing so and/or barred by laches from doing so;

f.  Pursuant to AAA Rule 34, Interim Measures, for the protection and conservation of Harvest's monies and property which are supposed to still be in the possession, custody and/or control of Falcon and/or one or more of the other defendants, and/or the proceeds thereof, including appointment of an equity receiver *pendente lite* on grounds of waste, fraud, abuse, illegal conduct, to take charge of Defendants' business, to report to the AAA arbitration panel as to its status, and to take any and all reasonable measures, to be more fully specified in a proposed Receivership Order, to protect Plaintiff's expectancies of recovery; and,

g.  For an award of attorneys' fees, forum fees, costs and expenses incurred by Plaintiffs, or any of them, in connection with this matter.

WHEREFORE, Plaintiffs respectfully requests that this Court grant the following relief:

A.  Make an order, pursuant to 9 U.S.C. §4, and the arbitration clauses quoted above, as well as alternatively the doctrines of agency, equitable estoppel

-24-

1    and/or third party beneficiary law,  or other applicable law, compelling all

2    Defendants to arbitrate the claims summarized above in this Petition and

3    Notice of Dispute, before the American Arbitration Association; and,

4    B.  Make such other orders and rulings in furtherance and aid of the order

5    compelling arbitration requested herein above.

6    Respectfully submitted this 6th day of January, 2020.

7    By: */s/ Paul A. Conant*
     Paul A. Conant, 012667
8    **CONANT LAW FIRM, PLC**
     2398 East Camelback Road #925
9    Phoenix, Arizona 85016-9002
     Telephone: 602.508.9010
10   Facsimile:  602.508.9015
     Email: docket@conantlawfirm.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26