1   Paul A. Conant, 012667
    **CONANT LAW FIRM, PLC**
2   2398 East Camelback Road #925
    Phoenix, Arizona 85016-9002
3   Telephone: 602.508.9010
    Facsimile:  602.508.9015
4   Email: docket@conantlawfirm.com
5       *Attorneys for Plaintiffs*

6           **IN THE UNITED STATES DISTRICT COURT**

7           **FOR THE DISTRICT OF ARIZONA**

8   Harvest Health & Recreation Inc., a British      Case No. CV-20-00035-PHX-DLR
9   Columbia, Canada corporation; Harvest
    Enterprises, Inc., a Delaware corporation;       **AMENDED COMPLAINT**
10  Harvest of California LLC, a California           **(PETITION TO COMPEL**
    limited liability company; Harvest          **ARBITRATION UNDER FEDERAL**
11  California Acquisition Corp., a Delaware          **ARBITRATION ACT)**
    corporation;
12
13              Plaintiffs,

14      vs.

15  Falcon International, Corp, a Delaware
    corporation; James Kunevicius, an
16  individual; Edlin Kim, an individual;
    Falcon California, Inc., a Delaware
17  corporation; Falcon Brands, Inc. a
    Delaware corporation; Coastal Harvest II,
18  LLC, a California limited liability
    company; First Canyon Holdings, LLC, a
19  Delaware limited liability company; G1
    Perez, LLC, a Delaware limited liability
20  company; V1 Perez, LLC, a Delaware
    limited liability company; Industrial Court
21  L11, LLC, a Delaware limited liability
    company; A1 Canyon, LLC, a Delaware
22  limited liability company; B1 Canyon,
    LLC, a Delaware limited liability company;
23  C1 Canyon, LLC, a Delaware limited
    liability company; D1 Canyon, LLC, a
24  Delaware limited liability company; E1

25
                                    -1-
26

Canyon, LLC, a Delaware limited liability company; Industrial Court L5, LLC, a Delaware limited liability company; Industrial Court L6, LLC, a Delaware limited liability company; Kane Concepts, LLC, a Delaware limited liability company; MK Point, LLC, a Delaware limited liability company; Cannoisseur Capital, LLC, a Florida limited liability company; BAM668, LLC, a California limited liability company; Rhino Group, LLC, a Delaware limited liability company; Grey Ghost Services, LLC, a Delaware limited liability company; Betterworld Ventures, LLC, a California limited liability company; Swoish Family Trust, an entity; Albert Kim, an individual; John "Johnny" Nasori, an individual; Noah Novello, an individual; David Mitchell, an individual; Brian Brown, an individual; Danielle Brown, an individual,

Defendants.

This Amended Complaint is submitted as a matter of course pursuant to Rule 15(a)(1)(B), Federal Rules of Civil Procedure, and relates back pursuant to Rule 15(c), Federal Rules of Civil Procedure. It remains a Petition to Compel Arbitration.

## **NATURE OF ACTION**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), Plaintiffs seek an order compelling al Defendants to arbitrate all claims and issues set forth herein, including any issues surrounding Plaintiff Harvest's January 6, 2020 termination and rescission of the Merger Agreement between Plaintiff Harvest and Defendant Falcon on grounds including that, even though Harvest fully performed all of its legal obligations under the Merger Agreement, Falcon was unable and unwilling to: (1) produce auditable financial information

or records concerning its business operations and revenue despite repeated requests by Harvest for such records and an obligation by Falcon to do so (as a publicly traded company Harvest cannot rely on the preliminary financial data originally provided by Falcon which Harvest has been unable to receive Falcon's cooperation to sufficiently substantiate); (2) rebut recently revealed evidence that it has transported marijuana across state lines, and failed to disclose that to Harvest as required by due diligence and contractual obligations; (3) rebut recently revealed evidence that it has failed to comply with California state law concerning the regulation of the sale of marijuana, and failed to disclose that to Harvest as required by its due diligence and contractual obligations. Falcon's reckless business practices have also threatened to put Harvest at risk of being named as a defendant, along with Falcon, in a whistleblower lawsuit in California, and other employment-related claims, if it were to proceed to closing the planned merger with Falcon. Such a whistleblower lawsuit was, in fact, filed on January 31, 2020 in the Superior Court of the State of California, for the County of Orange, North Justice Center, case number 30-2020-01128818-CU-WT-NJC. Other and/or additional claims against Falcon by third parties with employment claims are now anticipated. As part of Harvest's performance prior to the recent revelations and Falcon's inability or refusal to provide financial information to substantiate its activities, and Falcon's failure and refusal to disclose key details of its business practices, Harvest paid Falcon's control persons $4,100,000.00 personally for assets they personally sold to Harvest separate from Falcon, and further advanced over $47,000,000.00 in cash and equipment (*e.g.,* processing, manufacturing and packaging equipment and IT equipment) to Falcon. Despite Harvest having paid over $50,000,000.00 in cash and in-kind advances to Falcon and its principles, they have been attempting to manufacture ways to avoid Falcon's obligations under the Merger Agreement and, indeed, enjoy unlawful gains through the Merger Agreement. Given what Harvest

learned and believes about Falcon's business practices, and given other conduct by Falcon and its control persons described more fully below, and applicable law, Harvest to terminated and rescinded the Merger Agreement, did so on January 6, 2020, and is further entitled to seek return and recovery of all monies and things of value provided to Falcon and its control persons to date, and other remedies, in arbitration. Because Falcon harbored a dispute with Harvest of which it failed to seek resolution under mandatory language of the Merger Agreement's Dispute Resolution clause, Harvest is entitled to seek an order compelling arbitration under the FAA, and does so with this Petition to Compel arbitration.

This Amended Complaint and Petition to Compel arbitration continues Harvest's effort to place all disputes herein and between the parties into a mandatory arbitration pending before the American Arbitration Association ("AAA") (which Harvest has already commenced, AAA Case No. 012000001243 (the "Pending Arbitration")). The Pending Arbitration was commenced on January 6, 2020 by Harvest and Plaintiffs pursuant to the parties' agreements, each of which include mandatory arbitration clauses calling for AAA arbitration, where Harvest will: (1) seek restitution damages and other relief for the return of all monies and consideration provided to Falcon, and to put Harvest in the same financial position as it was *vis-à-vis* Falcon *ante* the Parties' Agreements; (2) seek appointment of a Receiver for all of Falcon's business and assets and to operate same compliantly, pending payment in full to Plaintiffs of the monies, damages and other relief to which claimants in the Arbitration are entitled.

Plaintiffs Harvest Health & Recreation Inc., a British Columbia, Canada corporation, ("Harvest"), Harvest Enterprises, Inc., a Delaware corporation ("Harvest Enterprises"), Harvest of California LLC, a California limited liability company ("Harvest of California"),

-4-

Harvest California Acquisition Corp., a Delaware corporation ("Harvest Acquisition") alleges as follows for its Petition to Compel Arbitration (as amended):

**THE PARTIES**

1.      Plaintiff Harvest Health & Recreation Inc. is a British Columbia, Canada corporation in good standing, with its principal place of business in Tempe, Arizona, and is a party to the transactions contemplated by the Merger Agreement (the "Contemplated Transactions") alleged herein.

2.      Plaintiff Harvest Enterprises, Inc. is a Delaware corporation in good standing and a party to the transactions contemplated by and integral to the Merger Agreement in that: (a) it is the lender under the certain Secured Promissory Note (and related, perfected Security Agreement) in the face amount of $40,353,881.12 (both dated June 7, 2019) with respect to which Defendant Falcon and its subsidiaries are "Co-Borrowers", under both the note and security agreement; (b) it is the lender under that certain Promissory Note dated February 15, 2019 in the face amount of $10,000,000.00 under which Defendant Falcon is the "Borrower"; and, (c) it is the lender under that certain Promissory Note dated February 14, 2019 in the face amount of $14,499.000 under which Defendant Falcon is the "Borrower".

3.      Plaintiff Harvest of California LLC is a California limited liability company in good standing and a party to the certain agreements alleged herein, including specifically the Membership Interest Purchase Agreement ("MIPA") dated as of June 7, 2019 pursuant to which it purchased the membership interests in companies owned beneficially by Falcon control persons James Kunevicius and Edlin Kim, called Elemental Concepts, LLC and Compass Point, LLC, for $4,100,000.00 in fully-paid, cash consideration, which MIPA was executed substantially contemporaneously with the First Amendment to the Merger

-5-

Agreement and with respect to with the cash consideration is due to be repaid to this Plaintiff within ninety (90) days of the January 6, 2020 termination of the Merger Agreement.

4.     Plaintiff Harvest California Acquisition Corp. is a Delaware corporation in good standing, with its principal place of business in Tempe, Arizona, and party to the Merger Agreement.

5.     Defendant Falcon International, Corp ("Falcon") is a Delaware corporation in good standing, with its principal place of business in California.

6.     Defendant James Kunevicius is an individual who claims North Carolina residency, although on information and belief he is a resident of California for California state law purposes. He is a control person of Falcon and its subsidiaries and affiliates, and beneficial owner of Defendant Kane Concepts, LLC and Elemental Concepts, LLC. He is jointly and severally (along with Elemental Concepts, LLC) responsible to refund monies to Plaintiff Harvest of California, LLC pursuant to the "put option", exercised on January 6, 2020.

7.     Defendant Edlin Kim is an individual who claims Nevada residency, although on information and belief he is a resident of California for California state law purposes. He is a control person of Falcon and its subsidiaries and affiliates, and beneficial owner of Defendant MK Point, LLC and Compass Point, LLC. He is jointly and severally (along with Compass Point, LLC) responsible to refund monies to Plaintiff Harvest of California, LLC pursuant to the "put option", exercised on January 6, 2020.

8.     Defendant Falcon California, Inc. is a Delaware corporation in good standing, with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

9.      Defendant Falcon Brands, Inc. is a Delaware corporation in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

10.     Defendant Coastal Harvest II, LLC is a California limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

11.     Defendant First Canyon Holdings, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

12.     Defendant V1 Perez, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

13.     Defendant Industrial Court L11, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

14.     Defendant A1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

15.     Defendant B1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

16.     Defendant C1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

17.     Defendant D1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

18.     Defendant E1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

19.     Defendant F1 Canyon, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

20.     Defendant Industrial Court L5, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

21.     Defendant Industrial Court L6, LLC is a Delaware limited liability company in good standing with its principal place of business in California and is referred to herein, from time to time, as a Note Debtor Defendant. It is a subsidiary and/or affiliate of Defendant Falcon.

22.     Each Note Debtor Defendant is a subsidiary and/or affiliate of Falcon, and Defendants James Kunevicius and Edlin Kim are control persons of each such entity, as well as Falcon itself.

23.     Defendant Kane Concepts, LLC is a Delaware limited liability company in good standing, with its principal place of business in California. Kane Concepts, LLC is owned beneficially and controlled by James Kunevicius. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

24.     Defendant MK Point, LLC is a Delaware limited liability company in good standing, with its principal place of business in California. MK Point, LLC is owned beneficially and controlled by Edlin Kim. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

25.     Defendant Cannoissuer Capital, LLC is a Florida limited liability company in good standing, with its principal place of business in Miami, Florida. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

26.     Defendant BAM668, LLC is a California limited liability company in good standing, with its principal place of business in Santa Ana, California. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

27.     Defendant Rhino Group, LLC is a Delaware limited liability company in good standing, with its principal place of business in Delaware. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

28.     Defendant Grey Ghost Services, LLC is a Delaware limited liability company in good standing, with its principal place of business in Anaheim, California. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

29.     Defendant Betterworld Ventures, LLC is a California limited liability company in good standing, with its principal place of business in Temecula, California. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

30.     Defendant Swoish Family Trust is family trust with its principal place of domicile and/or business in California. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

31.     Defendant Albert Kim is an individual whose domicile is in California and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

32.     Defendant John "Johnny" Nasori is an individual whose domicile is in California and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

33.     Defendant Noah Novello is an individual whose domicile is in California and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

34.     Defendant David Mitchell is an individual whose domicile is presently unknown, and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon.

35.     Defendant Brian Brown is an individual whose domicile is presently unknown, and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

36.     Defendant Danielle Brown is an individual whose domicile is presently unknown, and is a stockholder of Falcon. Claims alleged against this Defendant are alleged against him individually and in his capacity as a stockholder of Falcon. This Defendant is a "Company Stockholder" under the Merger Agreement and a party and signatory to said agreement.

37.     Each Company Stockholder named herein as a Defendant is named in order to allow Plaintiffs complete relief as to the termination of the Merger Agreement, its rescission, and Plaintiffs' various rights and remedies as alleged herein.

### THE MERGER AGREEMENT and RELATED TRANSACTIONS

38.     A Merger Agreement dated February 14, 2019 was entered into by, between and/or among Plaintiff Harvest and Harvest Acquisition and Falcon and certain other Defendants as Shareholders of Falcon (the "Merger Agreement").

39.     Among other things, the Merger Agreement includes within it an arbitration clause at Section 9.10, severable or separable from the Merger Agreement itself, in accord with the "doctrine of separability" announced by the United States Supreme Court in *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

40.     Under the "doctrine of separability", a party rescinding a contract containing an arbitration clause does not, merely by rescinding or terminating that main contract, also rescind or terminate the arbitration clause, which clause remains in full force and effect even when the main contract is rescinded or terminated.

41.     In connection with the Merger Agreement, a number of other agreements were executed by and among various parties.

42.     Each Defendant named herein is a party to a terminated and rescinded contract, and is named herein to vindicate and confirm Plaintiffs' termination and rescission rights, including the right to statutory, rescissory and other damages and other relief.

43.     Promissory notes were made by Falcon and certain Note Debtor Defendants, payable to Harvest Enterprises, Inc.; specifically:

        a.  Falcon entered into a February 15, 2019 Promissory Note in the amount of $10,000,000.00 payable to Harvest Enterprises to memorialize amounts previously advanced by Harvest Enterprises to Falcon (the "2/15 Note"); and,

        b.  Falcon and Note Debtor Defendants Falcon California, Inc. and Falcon Brands, Inc. entered into a February 14, 2019 Promissory Note in the amount of $14,499,000.00 payable to Harvest Enterprises to memorialize amounts previously advanced by Harvest Enterprises to Falcon (the "2/14 Note").

44.     The Merger Agreement was amended by the First Amendment to Agreement and Plan of Merger and Reorganization, effective as of June 7, 2019 (the "Amendment").

45.     In connection with the Amendment, Falcon and all Note Debtor Defendants entered into a June 7, 2019 Secured Promissory Note in the amount of $40,353,881.12 payable to Harvest Enterprises ("6/7 Note").  Harvest Enterprises funded $23,353,881.12 under the 6/7 Note in accordance with its terms and as agreed to by the parties to such note.

46.     The above-referenced promissory notes may be referred to herein, collectively, from time to time, as the Promissory Notes.

47.     Substantially contemporaneously with the Amendment, Defendants James Kunevicius and Edlin Kim negotiated a separate but related transaction with Harvest of California (the "Control Person Transaction") through which they sold to Harvest of California 100% of the membership interests in Industrial Court L8, LLC ("L8") and Industrial Court L10, LLC ("L10") *via* their personally-owned membership interests in two limited companies called Elemental Concepts, LLC, a North Carolina limited liability company (owned beneficially by Defendant James Kunevicius) and Compass Point, LLC, a Delaware limited liability company (owned beneficially by Defendant Edlin Kim).  The purchase price for the sale of L8 and L10 to Harvest of California was an aggregate of $4,100,000.00, with 50% of that purchase price to go to James Kunevicius and 50% to go to Edlin Kim, pursuant to an (a) Assignment Agreement dated June 7, 2019 with no specified state or federal court venue, (b) the June 7, 2019 MIPA with no specified state or federal court venue; and, (c) an "Undertaking" dated June 7, 2019 with no specified state or federal court venue. The MIPA specifies that disputes relating to the Control Person Transaction are to be arbitrated with the American Arbitration Association. Plaintiff Harvest of California, LLC has presented claims against Defendants James Kunevicius and Edlin Kim in the Pending Arbitration, seeking return of the cash consideration paid by it in connection with the Control Person Transaction.

48.     All of the above-referenced agreements were negotiated in substantial part in Arizona, call for substantial performance in Arizona, a substantial part of the events or omissions giving rise to the claims stated herein were directed into and thus occurred in Arizona, the Promissory Notes were delivered in Arizona, and the Merger Agreement and Promissory Notes include jurisdiction and venue provisions expressly referencing Maricopa County, Arizona.

-13-

1

## JURISDICTION AND VENUE

2      49.     As permitted by 9 U.S.C. §4, this United States District Court has jurisdiction

3   to rule on and determine Plaintiff Harvest's Petition to Compel Arbitration in the Pending

4   Arbitration.

5      50.     Under the "look through" method of analysis announced by the United States

6   Supreme Court in *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2008), the district court should

7   "look through" a §4 petition such as this to the underlying substantive controversy, to

8   determine whether it would provide a basis for jurisdiction absent the parties' obligations to

9   arbitrate.

10      51.     As alleged herein and below, the conclusion of a look through analysis

11   demonstrates federal question jurisdiction and supplemental jurisdiction over pendent claims,

12   providing a jurisdictional basis for this Court to grant 9 U.S.C. §4 relief by compelling the

13   matters outlined herein to the Pending Arbitration.

14      52.     But for the parties' mandatory arbitration obligations, this Court would have

15   original jurisdiction over Plaintiffs' federal question claims, and supplemental jurisdiction

16   over Plaintiffs' pendent state law claims, pursuant to Sections 10(b) and 20(a) of the Securities

17   Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5

18   promulgated thereunder by the United States Securities and Exchange Commission at 17

19   C.F.R. §240.10b-5, based on 28 U.S.C §§1331 and 1367, and Section 27 of the Exchange Act,

20   15 U.S.C. § 78aa.

21      53.     Section 9.10(b) of the Merger Agreement states that "any legal suit, action or

22   proceedings arising out of or based upon this Agreement, the other transaction documents or

23   contemplated transactions may be instituted in the federal courts of the United States of

24   America or the courts of the State of Delaware, in each case located in Maricopa County,

25

26

-14-

Arizona, and each party irrevocably submits to the personal jurisdiction of such courts in any such suit, action or proceeding."

54.    This action to compel arbitration pursuant to 9 U.S.C. §4 is brought in conformity with Section 9.10(b) of the Merge Agreement.

55.    The venue for any disputes concerning any of the Promissory Notes alleged herein above is within Maricopa County, Arizona, and such disputes are subject to arbitration in the Pending Arbitration, pursuant to principles of contract and agency law.

56.    Disputes arising under the Control Person Agreement are subject to arbitration in the Pending Arbitration, as are the parties to the Control Person Agreement, under principles of contract and agency law.

57.    Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b), Section 9.10(b) of the Merger Agreement, and 9 U.S.C. §4.

## **GENERAL ALLEGATIONS**

**A.    Invocation of the Federal Arbitration Act to Compel Arbitration.**

58.    The Merger Agreement includes a Dispute Resolution clause at Section 9.10 which, at Section 9.10 (a) and (b), provides:

   a.  "If there is any dispute or controversy relating to this Agreement or any of the Contemplated Transactions (each, a "*Dispute*"), such Dispute shall be resolved in accordance with this Section 9.10 provided that any Disputes relating to any tax Return shall be resolved as set forth in Section 5.06(c)."

   b.  The Party claiming a Dispute shall deliver to each of the other Parties a written notice (a "*Notice of Dispute*") that will specify in reasonable detail the dispute that the claiming Party wished to have resolved….".

59.     On September 5, 2019, Falcon issued a perfunctory notice of "pending" default to Harvest under a different clause of the Merger Agreement, concerning a brief delay in delivery of a fractional minority portion of the millions of dollars loaned by Harvest to Falcon as part of the Merger Agreement.

60.     After that notice, and before October 5, 2019, Harvest came to reasonably believe and conclude the matter referenced in the notice of "pending" default had been resolved because: (a) Falcon received and accepted the funds on an agreed schedule, and did not return or reject any of them; (b) Falcon claimed to have thereafter used the funds only for proper purposes pursuant to the express terms of the Merger Agreement; (c) Falcon never identified any actual harm resulting from the brief delay; (d) Falcon subsequently joined Harvest in a joint Hart-Scott-Rodino substantial compliance certification news release indicating that closing of the Merger Agreement was planned to go forward; and, (e) other words and conduct of Falcon and its principles and representatives indicated Falcon planned to proceed to closing under the Merger Agreement.

61.     Harvest openly and outwardly expressed to Falcon manifestations of its belief that the brief delay issue had been fully and finally resolved, and had been abandoned by Falcon.

62.     Despite those open and outward manifestations of Harvest's belief in that regard, Falcon harbored a Dispute with Harvest over that issue for at least some period of time five (5) days or more before October 30, 2019.

63.     Indeed, herein Falcon has affirmatively claimed that, for some period of time before October 30, 2019, it did have a purported "right to terminate the Merger Agreement" (Doc. 13, 5:7-8), even though it did not do so.

64.     And, weeks after Harvest's termination of the Merger Agreement on January 6, 2020, Falcon issued a letter   to Harvest purporting that it (Falcon) was terminating the (already-terminated) Merger Agreement, premised on the idea that it (Falcon) had successfully harbored the right to do so stemming from the September 5, 2019 letter.

65.     In light of Harvest's open and objective manifestation to Falcon of its belief that the matter had been resolved for at least five (5) days before October 30, 2019, if Falcon contended the brief delay issue was not resolved during that period, Falcon was required to issue a Notice of Dispute to Harvest under Section 9.10 of the Merger Agreement, attempt to resolve the matter with Harvest within the subsequent five (5) days and, failing a resolution, was required to proceed to mandatory arbitration before the AAA, according to the strictures of the Dispute Resolution clause of the Merger Agreement.

66.     Falcon took none of those steps.

67.     As of the date the Complaint was filed, Harvest was thus aggrieved by Falcon's failure, neglect or refusal to proceed with the required steps of Section 9.10 of the Merger Agreement, including mandatory arbitration before the AAA.

68. The FAA states, at 9 U.S.C. §4, as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms

-17-

of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

69.     Upon the January 6, 2020 termination and rescission of the Merger Agreement, five (5) days' notice was promptly provided to Defendants by in-person delivery to Falcon's corporate notice address.

70.     In accord with both 9 U.S.C. §4 and Section 9.10(b) of the Merger Agreement, the Complaint and Petition to Compel Arbitration served as Plaintiff Harvest's five day Notice of Dispute under the Merger Agreement, five day notice under the FAA, and the same was served on Falcon in the manner provided in the Federal Rules of Civil Procedure in compliance with both the FAA and the Merger Agreement.

71.     While Falcon has conceded that the issue of mandatory arbitration, stating that it "has agreed to arbitrate the dispute in accordance with the terms of the Merger Agreement…." and that (as to it) the arbitration issue is "now moot" and there "is nothing left for the Court to decide" (as to it) (Doc. 13:8, 16-19), none of the other entities or persons

-18-

named as Defendants have made the same concessions and, on information and belief, none have to-date acknowledged communications sent to them by the AAA Case Manager concerning progression of the arbitration.

72.     Accordingly, in order to assure that a single, unitary AAA arbitration concerning all disputes among all parties proceeds simultaneously, in accord with the parties' mandatory arbitration agreements, Plaintiffs petition and move the court for an order compelling arbitration as to all Defendants herein in accord with the foregoing cited arbitration clause and authorities, and into the Pending Arbitration.

73.     The Complaint was Harvest's timely and compliant Notice of Dispute under the Merger Agreement, which states as follows at Section 9.10(c):

> Any arbitration hereunder shall be conducted in accordance with the rules of the American Arbitration Association then in effect. The Company [Falcon] and the Parent [Harvest] shall each select one arbitrator, and the two arbitrators so selected shall select a third arbitrator, and the three arbitrators shall resolve the Dispute. The arbitrators will be instructed to prepare in writing as promptly as practicable, and provide to the Parent and the Company Stockholders, such arbitrators' determination, including factual findings and the reasons on which the determination was based. The decision of the arbitrators will be final, binding and conclusive and will not be subject to review or appeal and may be enforced in any court having jurisdiction over the Parties. Each party shall initially pay its own costs, feels and expenses (including, without limitation, for counsel, expert and presentation of proof) in connection with any arbitration or other action or proceeding brought under this Section 9.10, and the fees of the arbitrators shall be share[d] equally, provided, however, that the arbitrators shall have the power to award costs and expenses in a different proportion.

74.     Accordingly, the order compelling arbitration requested to be issued by this Court should compel Falcon and the remaining Defendants into the Pending Arbitration in accord with the foregoing provision.

75.     Thus, if there is any dispute raised by any of the Defendants as to arbitrability prior the Court's order compelling arbitration, arbitration should still be compelled and the matter of arbitrability not decided by this Court, but instead be decided by the arbitrator(s) because the parties have incorporated the AAA rules into their mandatory arbitration clause at Merger Agreement Section 9.10(b) and, under those rules, disputes (if any) as to arbitrability are to be resolved by the AAA arbitrator(s), not the Court. *See, e.g., Brake Master Systems, Inc. v. Gabbay*, 206 Ariz. 360, 78 P. 3d 1082 (App. 2003) ("when parties agree that the AAA rules govern the arbitration, implicitly included in that agreement is the rule that grants the arbitrators the authority to determine the arbitrability of the issues"); *see also*, Rules 7 and 8, American Arbitration Association Rules of Commercial Arbitration Procedure (concerning arbitral "Jurisdiction" and the arbitrator's rights concerning "Interpretation and Application of Rules.")

76.     Harvest Enterprises and the Note Debtor Defendants are subject to the arbitration clause in the Merger Agreement and Harvest Enterprises petitions and moves for an order compelling arbitration, into the Pending Arbitration, of the disputes arising under the Promissory Notes, and in connection with the Merger Agreement, as alleged herein.

77.     Harvest of California is entitled to arbitration as against Defendants James Kunevicius and Edlin Kim for the Control Person Transaction, and petitions and moves for an order compelling arbitration, into the Pending Arbitration, of the disputes concerning the Control Person Transaction, as alleged herein, including its exercise of the Purchaser Put Option as alleged herein below.

**B.     Allegations of Fact.**

78.     Like other similarly-situated companies whose underlying operations relate to the state-legalized sale of marijuana or cannabis, and occur in substantial part in the United

-20-

States, Harvest is a public company whose stock trades principally on the Canadian Securities Exchange ("CSE") and the OTCQX tier of the U.S. OTC Markets.

79.     Harvest is thus a "public company", meaning that equity in Harvest is traded on and available for sale among to and among members of the public, on the above-referenced exchanges, and is subject to rules and regulations governing public companies of its type.

80.     The Merger Agreement states that the consideration to be paid is, *inter alia,* $155,000,000.00 in Multiple Voting Shares of stock of Plaintiff Harvest, which trades on, *inter alia*, the CSE, with the number of Multiple Voting Shares to be issued on the Closing Date to be determined by contractually agreed-upon formulae set forth therein.

81.     While the Merger Agreement was executed by the parties as of February 14, 2019, it was not structured to close until after the occurrence of numerous events and actions, which might conceivably take many months, including potentially up to a year or more.

82.     The Merger Agreement has not closed, and had not closed before it was terminated and rescinded on January 6, 2020.

83.     So-called "Hart Scott Rodino", or "HSR" review of potential merger transactions by the United States Department of Justice is commonplace.

84.     The Merger Agreement was subject to almost immediate HSR review, which has the practical effect to barring a proposed merger from closing until after the government's HSR review is completed.

85.     The initiation of HSR review by the government precluded the closing from occurring during the review period, and otherwise in accord with specific rules concerning government merger review.

86.   After the Merger Agreement was executed as of February 14, 2019, and beginning in about March and April 2019, the trading prices of publicly-traded stocks in the marijuana company sector began to recede, as did Harvest's.

87.   A general representation of the industry-wide trend in that regard is reflected in the graphic below, generated by the *BI Global Cannabis Index* for the relevant market sector:



88.   The Merger Agreement contained no provisions or language which would allow Defendants to back out and not proceed to Closing just because of Harvest's stock price changes, including of the type depicted in the graphic above.

89.   Nonetheless, as publicly-traded marijuana company stock prices, and Harvest's, began to recede in the general manner depicted in the trend shown in the graphic above, Defendants (through the conduct and statements of Defendant James Kunevicius and Defendant Edlin Kim) began to engage in conduct which is now questioned in this Petition, Complaint, and Notice of Dispute, as summarized herein.

90.     Initially, Defendants James Kunevicius and Edlin Kim reacted to the stock price trend referenced above by seeking to renegotiate the Merger Agreement, resulting in the June 7, 2019 Amendment.

91.     The June 7, 2019 Amendment increased the stock consideration due under the Merger Agreement to $240,000,000.00.

92.     Defendants James Kunevicius and Edlin Kim also negotiated the June 7, 2019 Control Person Transaction for themselves, providing for them to personally split a payment of $4,100,000 without any apparent value or consideration to be realized by the non-controlling shareholders of Falcon.

93.     By June 7, 2019, the Merger Agreement, Amendment, Promissory Notes and the Control Person Transaction (collectively, "the Parties' Agreements") together provided for lucrative consideration to be paid to Defendants James Kunevicius and Edlin Kim and entities they owned or controlled.

94.     Pursuant to the Parties' Agreements, Plaintiffs collectively provided substantial consideration to Defendants, which they received and kept, including in-kind consideration and draw-downs on loans pending Closing, to be used for specific purposes prior to Closing of the Merger Agreement as amended.

95.     The Control Person Transaction actually closed, resulting in the payment directly or indirectly to James Kunevicius and Edlin Kim of $4,100,000.00 in cash consideration.

96.     While Defendants James Kunevicius and Edlin Kim required the execution of documents reflecting the Control Person Transaction as an effective condition of the Amendment, calling for Harvest of California to purchase their interests in two non-operational limited liability companies with California marketplace processing licenses,

1   Plaintiffs now question whether Defendants James Kunevicius and Edlin Kim adequately

2   disclosed the terms of the Control Person Transaction to all other Defendants, and may

3   investigate and take further action on that issue.

4       97.     Harvest of California would not have entered into the Control Person

5   Transaction with Defendants James Kunevicius and Edlin Kim had it not believed that the

6   Merger Agreement would move forward to closing, and that Defendants James Kunevicius

7   and Edlin Kim were also committed to moving forward to closing, and as its control persons

8   would cause Falcon to comply with its obligations under the Merger Agreement, as amended,

9   and refrain from withholding vital information, breaching warranties and/or representations

10  and/or covenants under the Merger Agreement, breaching the Merger Agreement, and/or

11  repudiating the Merger Agreement.

12      98.     During a period of time in August and September 2019, when Harvest was

13  engaged in discussions with Falcon about Falcon attempting to rationalize Falcon's use and

14  timing of the loan proceeds, its business operations, and efforts to fulfill its obligations set

15  forth in the Merger Agreement prior to Closing, Falcon instructed its lawyer named Sander

16  Zagzebski to issue a "Notice of Breach and Pending Parent Default" dated September 5, 2019

17  (the "Zagzebski Letter")  stating, *inter alia*, that Falcon wanted certain monies from Harvest,

18  and that if it did not comply, Harvest would be in default under the Merger Agreement.

19      99.     The Zagzebski Letter asserted that Harvest had failed to provide Falcon with

20  $5.15 million it had requested nine (9) days earlier, and claimed that a total of $6.15 million

21  was due as of September 5, 2019.

22      100.    By that time, Harvest had already advanced loans to Falcon in the total amount

23  of $47,852,881.12 under the terms of the 2/14 Note, the 2/15 Note and the 6/7 Note and, while

24  later advances under the 6/7 Note were not funded on the exact schedule Falcon specified in

25
26

the Zagzebski Letter, well over two-thirds of the monies to be advanced to Falcon under the Promissory Notes had been advanced to it, Harvest was working with Falcon to provide it will all monies for which it demonstrated a legitimate business need, and Falcon received and accepted all loan advances (including those addressed in the Zagzebski Letter) on an agreed schedule thereafter, and did not return any of those monies or, for that matter, any of the consideration provided to it by Harvest or any of the Plaintiffs, or any of the consideration provided by any of the Plaintiffs to or for the benefit of any of the Defendants. Further, Falcon represented that all funds received from Harvest, including those received after the Zagzebski Letter, were used for proper purposes under the Merger Agreement.

101.   Harvest now believes the Zagzebski Letter was not sent in good faith but, instead, for strategic and bad faith purposes.

102.   After Falcon received all of the monies referenced above, Falcon outwardly appeared to be working with and moving forward with Harvest to a Closing of the Merger Agreement, as amended.

103.   On September 24, 2019, Harvest and Falcon both certified "substantial compliance" with a common legal requirement relating to federal antitrust law jurisprudence under HSR rules, a so-called "Request for Additional Information and Documentary Materials issued by the United States Department of Justice" regarding Harvest's proposed acquisition of Falcon by merger.

104.   As announced, the certification of substantial compliance commenced a 30 day waiting period, after which the HSR-related delay which had been in effect since at or about the time of the announcement of the Merger Agreement, Harvest and Falcon would be free to close their planned merger transaction, meaning that the Closing could occur on or after

October 23, 2019 unless the United States Department of Justice raised federal antitrust law concerns under HSR rules in a specific manner.

105.    Harvest did not expect the United States Department of Justice to raise any HSR concerns after expiration of the waiting period nor, on information and belief, did Falcon.

106.    While Falcon appeared to continue to work with Harvest toward Closing after the HSR substantial compliance certification was completed and the 30 day waiting period began following the parties' joint notice, Falcon had ignored providing financial information to Harvest which it had been requesting regularly for a number of weeks, and which was necessary for Closing and required by Falcon's Affirmative Covenants to Harvest in the Merger Agreement.

107.    As more time passed and October 23, 2019 approached with no responses from Falcon to its requests for financial information, concern began to arise, and Harvest considered potentially issuing a default notice to Falcon concerning its failure to (as required by Merger Agreement Section 5.02(c)) furnish to Harvest "true, correct and complete copies of all records, documentation and other information in its possession" as Harvest might request, and also issue a Notice of Dispute to Falcon under Section 9.10 of the Merger Agreement concerning that same issue, but instead wrote to Falcon on October 16, 2019, at its official address for receipt of notices under the Merger Agreement.

108.    The October 16, 2019 letter from Harvest to Falcon was short of a formal default notice or Notice of Dispute and stated, among other things, "we are a short way from completing the merger and are committed to working with your finance and operational teams to complete the needed financial information and request for information outlined in this letter", and further expressed concerns about the status of Falcon's books and records, its financial disclosures and about early, emerging information about Falcon being presented by

a former employee whistleblower that appeared potentially troubling as to the potential illegality of some of Falcon's business practices.

109.     Rather than responding substantively to Harvest's October 16, 2019 letter, Falcon instead negotiated for a "standstill agreement" with Harvest, which was ultimately signed as of October 30, 2019 ("Standstill Agreement").

110.     Falcon (through Defendants James Kunevicius and Edlin Kim) orally reassured Harvest representatives that nothing was wrong, the former employee's claim was unsupportable, and Edlin Kim represented in the presence of James Kunevicius (who did not correct him or seek to modify his statement) that Falcon's books are "the best".

111.     Effects of the October 30, 2019 Standstill Agreement included that, during the 30 day "standstill period":

      a.  Harvest was prevented from declaring Falcon to be in breach or default;

      b.  Falcon would not have to respond to Harvest's October 16, 2019 letter seeking financial information and more details about the potential whistleblower's evidence; and,

      c.  Falcon could -- without disclosing to Harvest the financial information it had requested in the October 16, 2019 letter -- seek debt financing from some other source, besides Harvest.

112.     Nothing in the Standstill Agreement provided for progress towards a Closing to be halted.

113.     Into November 2019, Harvest officials continued to request financial and other information from Falcon as contemplated under the Merger Agreement and important for the Closing, and as requested by the October 16, 2019 letter.

114.    Falcon provided none of the financial or other information important for Closing that Harvest requested from it in September, October and November 2019.

115.    Falcon also provided none of the other information requested by Harvest including, for example, specific factual information (if any) which might rebut assertions by the whistleblower.

116.    As the Standstill Agreement was scheduled to end, Falcon instead negotiated an extension of the Standstill Agreement to January 5, 2020, to which Harvest agreed.

117.    Eventually, on December 10, 2019, Defendant James Kunevicius provided a two-page draft marked "Tentative and Preliminary" of the Consolidated Balance Sheet and Consolidated Statement of Operations, representing that it constituted Falcon's preliminary [sic] "GAP financials" as "prepared by MGO under their pre-audit work" and represented that they are "in town this week working with the on-site accounting team on Oct & Nov."; this communication and two-page tentative and preliminary draft attached to it did not address the matters raised by Harvest in the October 16, 2019 letter, and raised more questions than it answered.

118.    During the standstill period, as extended, Harvest representatives met for business meetings with Falcon personnel at a marijuana business convention to discuss the status of the Merger Agreement and related efforts.

119.    The business meetings at the convention were non-productive, with one Falcon representative (Edlin Kim) appearing at the meeting with visibly large amounts of cash in his front pocket and back pocket and in a bag, and wearing what appeared to be many tens of thousands of dollars in men's jewelry made of gold, and with both Falcon representatives (Edlin Kim and James Kunevicius) expressing no interest in doing any work to move the planned transaction with Harvest forward and, instead, stating openly that Falcon would not

close the Merger Agreement, as amended, due exclusively to the decline in Harvest's stock price.

120.    The statements by Defendants James Kunevicius and Edlin Kim in that regard were voluntary, affirmative and made clear that Falcon did not intend to perform under the Merger Agreement.

121.    Also during the standstill period, as extended, Harvest has additionally learned more information about Falcon which has led it to reasonably believe that Falcon cannot close the transactions contemplated by the Merger Agreement, as amended, without breaching its terms because Harvest is informed and believes that:

      a.  Falcon has misrepresented to Harvest that it had no undisclosed liabilities;

      b.  Falcon has misrepresented to Harvest that it had complied and was complying with all Laws (as defined in the Merger Agreement) applicable to its business other than any noncompliance which would not result in a breach of the Merger Agreement;

      c.  Falcon misrepresented to Harvest that it had not made any untrue statement of material fact in Merger Agreement representations and warranties or statements in Disclosure Schedules;

      d.  Falcon misrepresented to Harvest that its Interim Balance Sheet fairly presented its financial condition within applicable accounting categories within 5% margins;

      e.  Falcon omitted and/or refused to conduct its business in the Ordinary Course of Business or, alternatively, omitted to inform Harvest that its business practices included ongoing violations of applicable law;

f.  Falcon omitted and/or refused to provide Harvest with reasonable access to its books and financial records and either failed to give notice to Harvest of any board of directors meetings or failed to conduct any such meetings in connection with the performance of Falcon's obligations under the Merger Agreement;

g.  Falcon omitted and/or refused to provide Harvest with true, correct and complete copies of all records, documentation and other information in its possession, as reasonably requested by Harvest;

h.  Falcon omitted and/or refused to notify Harvest as promptly as reasonably practical upon becoming aware of any event or occurrence capable of causing a material impact on the business of Falcon; and,

i.  Falcon omitted  and/or refused to used commercially reasonable efforts to cause the conditions precedent in Article VI of the Merger Agreement to be satisfied, including insuring that of its representations and warranties shall be true in all material respects as of the specified date, and performing all of the covenants required by the Merger Agreement.

122.  Harvest is informed and believes, based on its research and analysis and evaluation of the facts as alleged herein, that the above-referenced misrepresentations constitute false representations of material fact, were known to be false or were made with reckless indifference for the truth, were made to induce Harvest to act or refrain from acting, Harvest's action or inaction was taken in justifiable reliance upon the misrepresentations, and Harvest has suffered damage as a result of its reliance.

123.  Harvest is informed and believes, based on its research and analysis and evaluation of the facts as alleged herein, that the above-referenced omissions constitute

misleading omissions of material fact, were known to be false or misleading, or were omitted with reckless indifference for the truth, were omitted to induce Harvest to act or refrain from acting, Harvest's action or inaction was taken in justifiable reliance upon the omissions, and Harvest has suffered damage as a result of its reliance.

124.    Specifically, evidence exists that Falcon was knowingly engaged in a pattern of ongoing violations of law and regulations governing its conduct as a marijuana/cannabis business, on information and belief, including (a) providing marijuana/cannabis in violation of California Bureau of Cannabis Control ("CBCC") regulations and (b) interstate transportation of marijuana/cannabis before the Merger Agreement was executed, and (c) that it engaged in ongoing CBCC regulation violations after the Merger Agreement was executed.

125.    Falcon's transportation of marijuana/cannabis across state lines as alleged above constitutes a breach of warranties and representations and covenants contained in the Merger Agreement, and additionally and separately constitutes a breach of the Merger Agreement, an undisclosed liability, and renders material statements of fact made by Falcon in the Merger Agreement untrue.

126.    Falcon's prior and ongoing violations of CBCC regulations as alleged above constitute a breach of the Merger Agreement, an undisclosed liability, and renders material statements of fact made by Falcon in the Merger Agreement untrue.

127.    Further, evidence exists that Falcon's Interim Balance Sheet, on information and belief, based on Harvest's research and analysis and evaluation of the facts as alleged herein, did not fairly present its financial condition within applicable accounting categories within 5% margins, including that Falcon has remained unable or unwilling to provide "true, correct and complete" documentation (as required by the Merger Agreement) indicating that

its books and records have been properly maintained, despite previous and repeated written requests by Harvest for such information.

128.   In addition, Harvest believes that Falcon erroneously harbors a contention that it is not estopped from asserting, or barred by laches from asserting, the purported validity of the bad faith Zagzebski Letter as a basis for claiming to terminate the Merger Agreement, as amended, and seek to keep for itself, and not repay, the consideration which all Defendants have received to date from Plaintiffs, or any of them, and to make a claim for even more money.

129.   Based on the foregoing, Harvest terminated and rescinded the Merger Agreement on January 6, 2020.

130.   No notice or cure period prior to termination was required for Harvest's termination of the Merger Agreement.

131.   Merger Agreement Section 7.02 allows for termination if Falcon and/or the Falcon's owners "fails to perform any of their respective material obligations under this Agreement or is in breach in any material respect of any representation, warranty, covenant or agreement on the part of [Falcon or its owners] set forth in this Agreement…".

132.   As of the date of the termination, Falcon and its owners had failed to perform their respective material obligations under the Merger Agreement and were in material breach of representations, warranties, covenants and agreements set forth in the Merger Agreement.

133.   None of the failures or breaches were capable of being cured, in part because Falcon had fraudulently induced Harvest to enter into the Merger Agreement by its false representations of material fact and omissions of material fact, in part because Falcon could not go back in time to undo its prior violations of applicable law concerning the handling, sale

and transportation of marijuana, and in part because Falcon had repudiated the Merger Agreement during the Standstill Agreement period, as extended.

134.   The termination was not precluded by the Standstill Agreement, as extended, or otherwise.

135.   Based on the foregoing, Harvest commenced the Pending Arbitration, as provided in the Merger Agreement, as amended, concerning at least the following claims and issues, and those otherwise alleged herein, and as more fully set forth herein below:

  a. Rescission and/or termination of the Merger Agreement, as amended, effective as of the date of rescission/termination (January 6, 2020), and all of the other related agreements alleged herein above, including any and all: (i) employment agreements; (ii) services agreements; (iii) the Control Person Transaction; (iv) and/or any other contract, obligation or agreement entered into, made, or which has arises as a result of the Merger Agreement, as amended;

  b. An award of damages from Defendants, and each of them, including restitution damages, disgorgement, and recovery of any and all monies or in-kind payments advanced on any Promissory Note to Falcon or any Note Debtor Defendant, and to reverse and restore to the proper Plaintiff any and all assets, properties, monies or other rights restorable as restitution, damages, disgorgement or other like relief, or any other relief proper at law or in equity;

  c. Confirmation, as needed, that all Defendants are bound to arbitrate the disputes summarized herein under contractual arbitration clauses referenced herein above, the FAA, and/or principles of contract and agency law,

including equitable estoppel and third party beneficiary law, and the conduct of all Defendants in embracing and relying upon and making assertions under, direct or otherwise, the parties agreements containing the obligation to arbitrate;

d.  As to the Control Person Transaction, to confirm and/or effectuate the Purchaser Put Option set forth in Section 8.2(a) of the MIPA, such that Defendants James Kunevicius and Edlin Kim repay to Harvest of California all of the consideration paid in connection with that transaction, with this constituting the notice of exercise of the "Purchaser Put Option" provided for therein, given that, on information and belief, Defendants James Kunevicius and Edlin Kim contend that they are entitled to keep the $4,100,000 that they were paid, and will decline to repay it;

j.  For a declaration that, to the extent Falcon seeks to rely to the Zagzebski Letter as support for any claim of right, that it is estoped from doing so and/or barred by laches from doing so, and barred by its bad faith from doing so;

k.  Pursuant to AAA Rule 34, Interim Measures, for the protection and conservation of Harvest's monies and property which are supposed to still be in the possession, custody and/or control of Falcon and/or one or more of the other defendants, and/or the proceeds thereof, including appointment of an equity receiver *pendente lite* on grounds of waste, fraud, abuse, illegal conduct, to take charge of Defendants' business, to report to the AAA arbitration panel as to its status, and to take any and all reasonable measures,

to be more fully specified in a to be proposed Receivership Order, to protect Plaintiff's expectancies of recovery and other rights; and,

l.   For an award of attorneys' fees, forum fees, costs and expenses incurred by Plaintiffs, or any of them, in connection with this matter.

136.   On January 31, 2020, the whistleblower referenced above filed suit against Falcon Brands, Inc., Coastal Harvest II, LLC, Mark Malatesta, Edlin Kim and Jim Kunevicius in the Superior Court of the State of California for the County of Orange, North Justice Center, case number 30-2020-01128818-CU-WT-NJC (the "whistleblower suit").

137.   The whistleblower lawsuit alleges actual or attempted CBCC violations by Falcon and its subsidiaries and/or affiliates, including: (a) arranging to provide cannabis to a member of the general public without appropriate licensure; (b) directing at least one employee to take Falcon-branded (*e.g.*, "CRU Cannabis") product across state lines to Texas, in circumstances where that employee was allegedly arrested; (c) actually taking a "large volume of cannabis" from California to Nevada, which cannabis was then provided to members of the public without Nevada (or California) licensure to do so; and, (d) changing or altering labeling stickers on packages containing cannabis products in California.

138.   The whistleblower lawsuit also alleges failure to pay wages, and illegal retaliation against an employee.

139.   On information and belief, Falcon has not fully paid all members of its California sales force as of the relevant time, which failure constitutes a violation of Merger Agreement Section 3.18 concerning "Employment Matters", which required all compensation, wages, commissions and bonuses payable to employees , independent contractors or consultants for services rendered to be paid in full or accrued in full on the Interim Balance Sheet provided by Falcon to Harvest with the Merger Agreement, and only

$693,295 is reflected on the Interim Balance Sheet (collectively) as "Commissions/Reimb Payable", a number believed to include both commissions due and reimbursements due, and which is believed to understate the amount of compensation, wages, commissions and bonuses payable by Falcon as of the relevant date.

**CLAIMS FOR RELIEF**

**First Claim for Relief**

**Fraud in Connection With the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

140.    Plaintiffs reallege and incorporate by reference all paragraphs of the Amended Complaint herein.

141.    This is a federal question jurisdiction claim made against Falcon, Defendants named herein as its subsidiaries and affiliates, all of the Defendants identified as Company Shareholders, James Kunevicius and Edlin Kim, and is intended to be pursued in the Pending Arbitration, but is alleged herein for purposes of the "look through" doctrine announced by the United States Supreme Court in *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2008).

142.    Material misrepresentations or omissions of fact:

    a. Falcon made the following material misrepresentations of fact as of the Effective Date of the Merger Agreement:

        i. a "complete copy" of Falcon's unaudited, consolidated balance sheet dated January 31, 2019 was included with the Merger Agreement Disclosure Schedules, that said Interim Balance Sheet is "based on the books and records of [Falcon], and fairly [sic] present the financial condition of [Falcon] as of the respective dates they were prepared and the results of operation of [Falcon] for the

-36-

period indicated, in all material respects; provided that [Falcon] does not represent and warrant that the Interim Balance Sheet [sic] are prepared in accordance with GAAP…", and "…Notwithstanding the foregoing, an increase or decrease…of an applicable accounting category in the Interim Balance Sheet… in each case by up to five percent (5%) shall constitute a breach of this Section 3.05." *See* Merger Agreement Section 3.05, (the "IBS Representation"). This representation and warranty does not contain (A) a Material Adverse Effect limitation; (B) any no-footnotes exception, (C) a GAAP qualifier, (D) any "knowledge" qualifier. This representation was material to Harvest because the Merger Agreement is effectively a stock sale transaction pursuant to which all liabilities would likely transfer to Harvest upon Closing, Harvest is a public company, the Falcon financial statements would have to roll up into the Harvest financial statements upon Closing, and regardless of whether Falcon believed it could operate in derogation of CBCC regulations and other laws governing the manufacture, sale, transportation and possession of marijuana, or that its financial statements could fail to fairly present the operational results of Falcon (within 5% tolerances), Harvest could not tolerate any such failures in connection with a roll up into its consolidated financial statements, regardless of the magnitude or any effect on Falcon itself as a privately-held company. Because Falcon failed to disclose the

foregoing, the foregoing representation was materially false and misleading. The representation was misleading because it caused Harvest to believe the truth of the representation, which was, in fact, absent.

    ii.   "[Falcon] has no liabilities, obligations or commitments of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise…. except those which are adequately reflected or reserved against on the Interim Balance Sheet….". *See* Merger Agreement Section 3.06 (the "NUL Representation"). This representation is broadly sweeping, absolute and unqualified in any way, including as to those qualifications or limitations listed in the prior subparagraph. This representation was material to Harvest because a violation of CBCC regulations above a certain threshold, and any violation of federal law not protected by congressional de-funding of federal enforcement, or subject to a history of known violations not being investigated or pursued, constitutes a probable or likely liability, at least a possible liability, and must be shown on Falcon's financial statements directly or in notes thereto, and the absence of any such reflection or reservation or notation causes the Interim Balance Sheet to fail to adequately reflect or reserve against any such liability, and for the additional and separate reasons referenced in the prior subparagraph. Because Falcon failed to disclose the foregoing, the foregoing representation was materially

false and misleading. The representation was misleading because it caused Harvest to believe the truth of the representation, which was, in fact, absent.

iii. "[Falcon] has complied in all material respects, and is now complying in all material respects, with all Laws applicable to its business, properties or assets, other than to the extent failure to comply will not result in a Material Adverse Effect on [Falcon]…". *See* Merger Agreement Section 3.16(a) (the "Compliance with Laws Representation"). This representation is broadly sweeping, absolute and unqualified in any way, including as to those qualifications or limitations listed in the prior subparagraph at (B) through (D). This representation was material to Harvest because a violation of CBCC regulations above a certain threshold, and any violation of federal law not protected by congressional de-funding of federal enforcement, or subject to a history of known violations not being investigated or pursued, constitutes a probable or likely liability, at least a possible liability, and must be shown on Falcon's financial statements directly or in notes thereto, and the absence of any such reflection or reservation or notation causes the Interim Balance Sheet to fail to adequately reflect or reserve against any such liability, and for the additional and separate reasons incorporated by reference in the prior subparagraph, except as noted directly in this subparagraph. Because Falcon failed to disclose the foregoing, the foregoing representation was materially false and

1    misleading. The representation was misleading because it caused

2    Harvest to believe the truth of the representation, which was, in fact,

3    absent.

4    iv.   "The books and records, financial and otherwise, of [Falcon] are in

5          all material aspects true and correct….". *See* Merger Agreement

6          Section 3.20 (the "Books and Records Representation"). This

7          representation was material to Harvest because the Merger

8          Agreement is effectively a stock sale transaction pursuant to which

9          all liabilities would likely transfer to Harvest upon Closing, Harvest

10         is a public company, the Falcon financial statements would have to

11         roll up into the Harvest financial statements upon Closing, and

12         regardless of whether Falcon believed it could operate in derogation

13         of CBCC regulations and other laws governing the manufacture,

14         sale, transportation and possession of marijuana, or that its financial

15         statements (*i.e.,* "books and records, financial or otherwise") could

16         fail to fairly present the operational results of Falcon (at all),

17         Harvest could not tolerate any such failures in connection with a

18         roll up into its consolidated financial statements, regardless of the

19         magnitude or any effect on Falcon itself as a privately-held

20         company. Further, this representation is broadly sweeping, absolute

21         and unqualified in any way, including as to any of the qualifications

22         or limitations listed in the prior subparagraphs and, moreover,

23         broader in that it is not limited to just the Interim Balance Sheet.

24         This representation was material to Harvest because a violation of

25

26
                                    -40-

CBCC regulations above a certain threshold, and any violation of federal law not protected by congressional de-funding of federal enforcement, or subject to a history of known violations not being investigated or pursued, constitutes a probable or likely liability, at least a possible liability, and must be shown on Falcon's financial statements directly or in notes thereto, and the absence of any such reflection or reservation or notation causes the Interim Balance Sheet to fail to adequately reflect or reserve against any such liability, and for the additional and separate reasons referenced in the prior subparagraph. Because Falcon failed to disclose the foregoing, the foregoing representation was materially false and misleading. The representation was misleading because it caused Harvest to believe the truth of the representation, which was, in fact, absent.

b. Falcon made the following material omissions of fact as of the Effective Date of the Merger Agreement:

i. that Falcon has a history of violating CBCC regulations in the "Ordinary Course of Business" given its "past practices" of sales of marijuana to unlicensed purchasers, as the quoted terms above are defined in Merger Agreement Section 1.01(vvv), and specifically that Falcon has made sales to, on information and belief, the following purchasers at times when they were not licensed by the State of California to purchase marijuana from Falcon: (A) Pacific Wellness Center (sales by Defendant Coastal

-41-

Harvest II, LLC); (B) Universal Caregiver (sales by Defendant Coastal Harvest II, LLC); (C) American Cannabis Company (sales by Defendant Industrial Court L11, LLC); and, (D) Bodhi Sattva (sales by Defendant Industrial Court L11, LLC). The foregoing allegations are based on comparisons of sales by Falcon and/or its subsidiaries and affiliates to the list of licensed marijuana buyers maintained by the State of California stating the dates when those buyers did or did not have licenses, and the information and belief that arises therefrom. Additional research concerning additional, potential, unlawful sales by Falcon (through and/or by its subsidiaries and/or affiliates) to buyers at times when they were not licensed to purchase marijuana are ongoing and these allegations will be supplemented with newly updated information when it becomes available. The omissions were misleading because, when coupled with Falcon's representations alleged herein, they caused Harvest to believe in the absence of the omitted facts, which were, in fact, not absent. These omitted facts would have, if disclosed by Falcon, significantly altered the total mix of information made available to Harvest.

ii.    that Falcon has a history of violating CBCC regulations and federal law given its history of transportation of large quantities of marijuana across state lines, as alleged in the whistleblower complaint, and as reflected in and based on information and documentation attached to the whistleblower complaint at Exhibit

1 thereto. The omissions were misleading because, when coupled with Falcon's representations alleged herein, they caused Harvest to believe in the absence of the omitted facts, which were, in fact, not absent. These omitted facts would have, if disclosed by Falcon, significantly altered the total mix of information made available to Harvest.

      iii.   That the IBS Representation, the NUL Representation, the Compliance with Laws Representation, and the Books and Records Representation were materially misleading, based on the foregoing. The omissions were misleading because, when coupled with Falcon's representations alleged herein, they caused Harvest to believe in the absence of the omitted facts, which were, in fact, not absent. These omitted facts would have, if disclosed by Falcon, significantly altered the total mix of information made available to Harvest.

143. Scienter: Falcon's misrepresentations of material fact and omissions of material fact were made orally and approved by the signatures of control persons and Defendants James Kunevicius and Edlin Kim, who represented to Harvest that they are the long time operators of Falcon and its subsidiaries, involved directly in its growth and development, knowledgeable about all of its business practices and activities and financial results, and responsible for overseeing all aspects of Falcon's business. Edlin Kim has specifically orally represented to Harvest personnel that Falcon's financials are "the best" and that he has reason to know that because he has worked on them extensively himself. Based on the foregoing,

Falcon acted with scienter in making the material misrepresentation of fact and omissions of material fact alleged herein.

144.    Connection with the purchase or sale of a security: the consideration (Harvest stock) provided in the Merger Agreement (an investment contract) is a security, and the Promissory Notes issued by Defendants, or some of them, to Plaintiffs, or some of them, are securities (investment contracts) in that they reflect the investment of money (the loans) with the expectation of profit (Harvest expected the value of Falcon's business to increase), from the undeniably significant efforts of others (Falcon and its subsidiaries and affiliates and control persons). The above-referenced, actionable representations and warranties were made by Falcon in connection with the sale of Harvest stock and the Promissory Notes.

145.    Transaction and loss causation: Harvest specifically relied on the truth of the material misrepresentations and the absence of omissions of material fact alleged herein above when it entered into the Merger Agreement, entered into the Amendment to the Merger Agreement, and when it acted in conformity with the Merger Agreement as amended. Reliance on the foregoing led directly and proximately to the following nexus with Harvest's damages: once Harvest executed the Merger Agreement, it was required to perform thereunder, which confirmed the loan requirements alleged herein, and other obligations alleged herein, imposed upon Harvest. As a direct and proximate result and cause of Harvest's performance under the Merger Agreement, as amended, and the Control Person Transaction, it has been economically harmed.  The Merger Agreement as amended called for it to perform thereunder by expending resources to perform, to advance over $47 million in loaned funds, to pay $4.1 million in the Control Person Transaction, and to otherwise subject itself to the terms and conditions of the Merger Agreement, as amended, and the other requirements set forth in the documents memorializing the Contemplated Transactions. Accordingly, the

above-alleged representations and omissions not only caused Harvest to enter into the transactions referenced above, but also directly caused the precise losses experienced by Harvest as a result of its compliance with the Merger Agreement, as amended. Harvest's losses are attributable directly to Falcon's wrongdoing, not to separate or intervening forces or factors.

146.   Economic loss: Harvest's economic losses are what was caused by it entering into the Merger Agreement, as amended, and related agreements: the loans made pursuant to the Promissory Notes, the funds paid out pursuant to the Control Person Transaction and the expenditures reasonably required for Harvest to enter into those agreements and to comply with its obligations thereunder.

147.   Contrary stipulations void: to the extent that Falcon asserts that this claim and any remedies sought hereunder is or are barred, restrained, limited or precluded in any way by the Merger Agreement or any other agreement, such assertion is contrary to and barred by 15 U.S. Code § 77n.

**Second Claim for Relief**

**Control Person Liability**

**Violations of Section 20(a) of the Exchange Act**

148.   Plaintiffs reallege and incorporate by reference all paragraphs of the Amended Complaint herein.

149.   This is a federal question jurisdiction claim made against James Kunevicius and Edlin Kim and is intended to be pursued in the Pending Arbitration, but is alleged herein for purposes of the "look through" doctrine announced by the United States Supreme Court in *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2008).

150.    Defendants James Kunevicius and Edlin Kim are, by virtue of their positions and titles with Falcon and its subsidiaries and affiliates, control persons as they have the power and authority to cause Falcon to act or refrain from acting and, here, caused Falcon to make the material misrepresentations of fact and omissions of material fact.

151.    As control persons, they are liable to the same extent as is Falcon for the misrepresentations and omissions alleged herein.

152.    Contrary stipulations void: to the extent that Falcon asserts that this claim and any remedies sought hereunder is or are barred, restrained, limited or precluded in any way by the Merger Agreement or any other agreement, such assertion is contrary to and barred by 15 U.S. Code § 77n.

**Third Claim for Relief**

**Breach of Contract**

153.    Plaintiffs reallege and incorporate by reference all paragraphs of the Amended Complaint herein.

154.    This is a supplemental jurisdiction claim made against Falcon, Defendants named herein as its subsidiaries and affiliates, all of the Defendants identified as Company Shareholders and is intended to be pursued in the Pending Arbitration.

155.    Falcon materially breached numerous of its contractual obligations under the Merger Agreement, including at least the following provisions:

    a.   Affirmative Covenants:

        i.   Merger Agreement, Section 5.02(a): "unless otherwise agreed to by [Harvest], conduct the business of [Falcon] in the Ordinary Course of Business and will use commercially reasonable best efforts to maintain and preserve the assets of [Falcon], preserve intact the

-46-

current business organization of [Falcon], and [sic] user commercially reasonable efforts to maintain the relations and goodwill with" others;[1]

ii. Merger Agreement, Section 5.02(b): "provide [Harvest] and its Representatives and agents reasonable access to the books and financial records of [Falcon] at any time during normal business hours prior to the Closing Date, at [Harvest's] sole cost and expense, to perform any inspections or evaluations and, upon receiving from [Falcon] reasonable advance notice, observe any meetings of management of the Company and its boards of directors which [Harvest] reasonably deems necessary or appropriate, other than any such meetings or portions thereof which related to this Agreement or [sic][the] Contemplated Transactions";

iii. Merger Agreement, Section 5.02(c): "furnish to [Harvest] true, correct and complete copies of all records, documentation and other information in its possession as [Harvest] may reasonably request concerning [Falcon] or [its] Common Stock";

iv. Merger Agreement, Section 5.02(f): "provide notice to [Harvest] as promptly as reasonably practicable upon becoming award of any event or occurrence capable of causing a material impact on the business of [Falcon]; and,

---

[1]    The Merger Agreement, at Section 1.01(vvv), defines "Ordinary Course of Business" as "an action which is taken in the ordinary course of the normal day-to-day operations of the Person taking such action consistent with the past practices of such Person, [and] is not required to be authorized by the board of directors of such Person."

v.   Merger Agreement, Section 5.02(g): "between the Effective Date and the Closing Date or the earlier termination of this Agreement in accordance with its terms, use commercially reasonable efforts to cause the conditions precedent in Article VI to be satisfied."

b.   Representations and Warranties:

i.   Merger Agreement, Section 3.05, includes a warranty and representation by Falcon and the Company Stockholders that a "complete copy" of Falcon's unaudited, consolidated balance sheet dated January 31, 2019 was included with the Merger Agreement Disclosure Schedules, that said Interim Balance Sheet is "based on the books and records of [Falcon], and fairly [sic] present the financial condition of [Falcon] as of the respective dates they were prepared and the results of operation of [Falcon] for the period indicated, in all material respects; provided that [Falcon] does not represent and warrant that the Interim Balance Sheet [sic] are prepared in accordance with GAAP…", and "...Notwithstanding the foregoing, an increase or decrease…of an applicable accounting category in the Interim Balance Sheet… in each case by up to five percent (5%) shall constitute a breach of this Section 3.05."

ii.   Merger Agreement, Section 3.06, includes a warranty and representation by Falcon and the Company Stockholders that: "[Falcon]has no liabilities, obligations or commitments of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or

-48-

1                                    unmatured or otherwise…. except those which are adequately

2                                    reflected or reserved against on the Interim Balance Sheet….";

3           iii.    Merger Agreement, Section 3.16(a), includes a warranty and

4                                    representation by Falcon and the Company Stockholders that:

5                                    "[Falcon] has complied in all material respects, and is now

6                                    complying in all material respects, with all Laws applicable to its

7                                    business, properties or assets, other than to the extent failure to

8                                    comply will not result in a Material Adverse Effect on [Falcon]…";

9                                    and,

10        iv.    Merger Agreement, Section 3.20, includes a warranty and

11                                    representation by Falcon and the Company Stockholders that: "The

12                                    books and records, financial and otherwise, of [Falcon] are in all

13                                    material aspects true and correct….".

14   156.   Falcon breached the foregoing referenced provisions by:

15       a.  Affirmative Covenants:

16           i.     As to Merger Agreement, Section 5.02(a), by engaging in the

17                                    conduct alleged herein, including failing to seek any remedy for

18                                    Falcon's black market sales and other violations of law, including

19                                    CBCC regulations, and failing to conduct board of directors

20                                    meetings (or at least failing to provide reasonable advance notice to

21                                    Harvest of any);

22         ii.    As to Merger Agreement, Section 5.02(b), by failing to notify

23                                    Harvest of any board of directors meetings and failing to provide

24

25

26

Harvest and its Representatives with reasonable access to Falcon's books and financial records;

iii.   As to Merger Agreement, Section 5.02(c), by failing to furnish to Harvest true, correct and complete copies of all records, documentation and other information in its possession as Harvest reasonably requested, despite Harvest's multiple and ongoing requests for same prior to the standstill period;

iv.   As to Merger Agreement, Section 5.02(f), by failing to provide notice to Harvest as promptly as reasonably practicable upon becoming aware of an event or occurrence capable of causing a material impact[2] on the business of Falcon, including: (A) failing upon execution of the Merger Agreement to inform Harvest of Falcon's past practices (a "day one breach"); (B) failing upon execution of the Merger Agreement to inform Harvest of Falcon's past practices involving transportation of marijuana across state borders (another day one breach); and, (C) failing to inform Harvest of, on information and belief, ongoing sales to unlicensed buyers.

b.   Representations and Warranties:

i.   The IBS representation and warranty was breached by Falcon for the reasons alleged herein above.

ii.   The NUL representation and warranty was breached by Falcon for the reasons alleged herein above.

---

[2]   The term "material impact" as used in Section 5.02(f) is neither a capitalized nor defined term under the Merger Agreement, nor is it limited or qualified.

iii.   The Compliance with Laws representation and warranty was breached by Falcon for the reasons alleged herein above.

iv.   The Books and Records representation and warranty was breached by Falcon for the reasons alleged herein above.

157.   Falcon's breaches caused damage to Harvest (and any Harvest affiliate which is a party or signatory to or is otherwise bound by the Merger Agreement or its terms).

158.   The damages caused by Falcon are in an amount to be determined in the Pending Arbitration.

### Fourth Claim for Relief

### Breach of the Implied Covenant of Good Faith and Fair Dealing

159.   Plaintiffs reallege and incorporate by reference all paragraphs of the Amended Complaint herein.

160.   This is a supplemental jurisdiction claim made against Falcon, Defendants named herein as its subsidiaries and affiliates, all of the Defendants identified as Company Shareholders and is intended to be pursued in the Pending Arbitration.

161.   The loans referenced herein above were made as part and parcel of the overall set of transactions called for by the Merger Agreement.

162.   The Zagzebski Letter claiming a breach of the Secured Promissory Note constituted a breach by Falcon of the covenant of good faith and fair dealing implied in the Merger Agreement for at least two reasons.

163.   First, had the parties thought to do so, they would have included express language barring Falcon from attempting to declare a breach of the Merger Agreement based on a slight delay in the delivery of a fractional portion of monies to be loaned from Harvest to Falcon, after tens of millions of dollars had already been advanced (the vast majority (well

over two-thirds) of what was agreed), because such conduct by Falcon would so obviously be wrong.

164.    Second, to the extent that the existing contractual language conferred discretion on Falcon to issue a notice of "pending" default in such circumstances, that discretion was required to be used reasonably and in good faith, here it was not because the facts and circumstances show that the Zagzebski Letter was sent for strategic, bad faith purposes.

165.    Falcon's strategic, bad faith purposes in sending the Zagzebski Letter included at least the following: (a) attempting to maneuver into a situation where Falcon would claim, after having received the vast majority (well over two-thirds) of the loaned monies, and interim personal compensation to Falcon's principals and control persons (James Kunevicius and Edlin Kim), that it was converting all of the monies loaned by Harvest to it to an equity position in Falcon, under circumstances where Falcon had no rational need to be rewarded with or protected by such a remedy as it had suffered no actual harm, and was instead seeking an unwarranted windfall, in part due to the fact that the terms of any such conversion under the facts and circumstances would constitute an unenforceable penalty; and, (b)  attempting to maneuver into a situation where Falcon would claim that it was further entitled to an additional $50,000,000.00 breakup fee, under circumstances where Falcon had no rational need to be rewarded with or protected by such a remedy, as it had suffered no actual harm, and was instead seeking an unwarranted windfall, constituted an effort to benefit from an unenforceable penalty.

166.    Falcon's strategic, bad faith conduct alleged above constituted a breach of the Merger Agreement.

167.     Consistent with Falcon's strategic, bad faith conduct alleged herein, following the filing of the January 6, 2020 Petition to Compel Arbitration, Falcon (a private, non-publicly-held company) issued a January 21, 2020 PRNewswire news release stating that it has the "right" to "require Harvest to pay a cash breakup fee in the amount of US$50.0 million. In addition, amounts previously funded by Harvest to Falcon are convertible into Falcon equity at Harvest's or Falcon's option and, accordingly, are unlikely to be paid. Falcon expects that it will prevail in defending the matters set forth in Harvest's complaint and that it will be successful in enforcing its rights against Harvest as set forth in the merger agreement and related documents."

168.     As a result of Falcon's strategic, bad faith conduct in contravention of the Merger Agreement, Harvest (and any Harvest affiliate which is a party or signatory to or is otherwise bound by the Merger Agreement or its terms) was relieved from further performance thereunder following Falcon's breach.

169.     Harvest (and any Harvest affiliate which is a party or signatory to or is otherwise bound by the Merger Agreement or its terms) has been damaged by Falcon in an amount to be determined in the Pending Arbitration.

170.     The breaches and repudiation and conduct by Falcon and its representatives alleged herein above are evidence of Falcon's bad faith.

**Fifth Claim for Relief**

**Declaratory Judgment**

171.     Plaintiffs reallege and incorporate by reference all paragraphs of the Amended Complaint herein.

-53-

172.   This is a supplemental jurisdiction claim made against Falcon, Defendants named herein as its subsidiaries and affiliates, all of the Defendants identified as Company Shareholders and is intended to be pursued in the Pending Arbitration.

173.   The relevant Plaintiffs contend, and the relevant Defendants dispute the following:

      a.  Plaintiffs contend Falcon repudiated the Merger Agreement, but on information and belief, Falcon now disputes that;

      b.  Plaintiffs contend that monies are due back to Plaintiff Harvest of California, LLC from the unwinding of the Control Person Transaction, but on information and belief, Falcon now disputes that; and,

      c.  Falcon contends that it could "terminate" the (already terminated) Merger Agreement weeks after Harvest had terminated it on January 6, 2020, but Harvest disputes that contention.

174.   The foregoing disputed matters can be resolved and determined by a declaration of rights in the Pending Arbitration, and resolved with certainty and without need for speculation, conjecture or risking any advisory ruling.

### Sixth Claim for Relief

### Violations of the Arizona Securities Act Anti-fraud Provisions, ARS §44-1991

175.   Plaintiffs reallege and incorporate by reference all paragraphs of the Amended Complaint herein.

176.   This is a supplemental jurisdiction claim made against Falcon, Defendants named herein as its subsidiaries and affiliates, all of the Defendants identified as Company Shareholders, James Kunevicius and Edlin Kim, and is intended to be pursued in the Pending Arbitration.

177. Material misrepresentations or omissions of fact:

    a. Falcon made the following material misrepresentations of fact as of the Effective Date of the Merger Agreement:

        i. a "complete copy" of Falcon's unaudited, consolidated balance sheet dated January 31, 2019 was included with the Merger Agreement Disclosure Schedules, that said Interim Balance Sheet is "based on the books and records of [Falcon], and fairly [sic] present the financial condition of [Falcon] as of the respective dates they were prepared and the results of operation of [Falcon] for the period indicated, in all material respects; provided that [Falcon] does not represent and warrant that the Interim Balance Sheet [sic] are prepared in accordance with GAAP…", and "...Notwithstanding the foregoing, an increase or decrease…of an applicable accounting category in the Interim Balance Sheet… in each case by up to five percent (5%) shall constitute a breach of this Section 3.05." *See* Merger Agreement Section 3.05, (the "IBS Representation"). This representation and warranty does not contain (A) a Material Adverse Effect limitation; (B) any no-footnotes exception, (C) a GAAP qualifier, (D) any "knowledge" qualifier. This representation was material to Harvest because the Merger Agreement is effectively a stock sale transaction pursuant to which all liabilities would likely transfer to Harvest upon Closing, Harvest is a public company, the Falcon financial statements would have to roll up into the Harvest financial

statements upon Closing, and regardless of whether Falcon believed it could operate in derogation of CBCC regulations and other laws governing the manufacture, sale, transportation and possession of marijuana, or that its financial statements could fail to fairly present the operational results of Falcon (within 5% tolerances), Harvest could not tolerate any such failures in connection with a roll up into its consolidated financial statements, regardless of the magnitude or any effect on Falcon itself as a privately-held company. Because Falcon failed to disclose the foregoing, the foregoing representation was materially false and misleading. The representation was misleading because it caused Harvest to believe the truth of the representation, which was, in fact, absent.

ii.   "[Falcon] has no liabilities, obligations or commitments of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise…. except those which are adequately reflected or reserved against on the Interim Balance Sheet….". *See* Merger Agreement Section 3.06 (the "NUL Representation"). This representation is broadly sweeping, absolute and unqualified in any way, including as to those qualifications or limitations listed in the prior subparagraph. This representation was material to Harvest because a violation of CBCC regulations above a certain threshold, and any violation of federal law not protected by congressional de-

-56-

funding of federal enforcement, or subject to a history of known violations not being investigated or pursued, constitutes a probable or likely liability, at least a possible liability, and must be shown on Falcon's financial statements directly or in notes thereto, and the absence of any such reflection or reservation or notation causes the Interim Balance Sheet to fail to adequately reflect or reserve against any such liability, and for the additional and separate reasons referenced in the prior subparagraph. Because Falcon failed to disclose the foregoing, the foregoing representation was materially false and misleading. The representation was misleading because it caused Harvest to believe the truth of the representation, which was, in fact, absent.

iii.   "[Falcon] has complied in all material respects, and is now complying in all material respects, with all Laws applicable to its business, properties or assets, other than to the extent failure to comply will not result in a Material Adverse Effect on [Falcon]…". *See* Merger Agreement Section 3.16(a) (the "Compliance with Laws Representation"). This representation is broadly sweeping, absolute and unqualified in any way, including as to those qualifications or limitations listed in the prior subparagraph at (B) through (D). This representation was material to Harvest because a violation of CBCC regulations above a certain threshold, and any violation of federal law not protected by congressional de-funding of federal enforcement, or subject to a history of known violations

-57-

not being investigated or pursued, constitutes a probable or likely liability, at least a possible liability, and must be shown on Falcon's financial statements directly or in notes thereto, and the absence of any such reflection or reservation or notation causes the Interim Balance Sheet to fail to adequately reflect or reserve against any such liability, and for the additional and separate reasons incorporated by reference in the prior subparagraph, except as noted directly in this subparagraph. Because Falcon failed to disclose the foregoing, the foregoing representation was materially false and misleading. The representation was misleading because it caused Harvest to believe the truth of the representation, which was, in fact, absent.

iv.    "The books and records, financial and otherwise, of [Falcon] are in all material aspects true and correct….". *See* Merger Agreement Section 3.20 (the "Books and Records Representation"). This representation was material to Harvest because the Merger Agreement is effectively a stock sale transaction pursuant to which all liabilities would likely transfer to Harvest upon Closing, Harvest is a public company, the Falcon financial statements would have to roll up into the Harvest financial statements upon Closing, and regardless of whether Falcon believed it could operate in derogation of CBCC regulations and other laws governing the manufacture, sale, transportation and possession of marijuana, or that its financial statements (*i.e.,* "books and records, financial or otherwise") could

fail to fairly present the operational results of Falcon (at all), Harvest could not tolerate any such failures in connection with a roll up into its consolidated financial statements, regardless of the magnitude or any effect on Falcon itself as a privately-held company. Further, this representation is broadly sweeping, absolute and unqualified in any way, including as to any of the qualifications or limitations listed in the prior subparagraphs and, moreover, broader in that it is not limited to just the Interim Balance Sheet. This representation was material to Harvest because a violation of CBCC regulations above a certain threshold, and any violation of federal law not protected by congressional de-funding of federal enforcement, or subject to a history of known violations not being investigated or pursued, constitutes a probable or likely liability, at least a possible liability, and must be shown on Falcon's financial statements directly or in notes thereto, and the absence of any such reflection or reservation or notation causes the Interim Balance Sheet to fail to adequately reflect or reserve against any such liability, and for the additional and separate reasons referenced in the prior subparagraph. Because Falcon failed to disclose the foregoing, the foregoing representation was materially false and misleading. The representation was misleading because it caused Harvest to believe the truth of the representation, which was, in fact, absent.

b.  Falcon made the following material omissions of fact as of the Effective Date of the Merger Agreement:

i.  that Falcon has a history of violating CBCC regulations in the "Ordinary Course of Business" given its "past practices" of sales of marijuana to unlicensed purchasers, as the quoted terms above are defined in Merger Agreement Section 1.01(vvv), and specifically that Falcon has made sales to, on information and belief, the following purchasers at times when they were not licensed by the State of California to purchase marijuana from Falcon: (A) Pacific Wellness Center (sales by Defendant Coastal Harvest II, LLC); (B) Universal Caregiver (sales by Defendant Coastal Harvest II, LLC); (C) American Cannabis Company (sales by Defendant Industrial Court L11, LLC); and, (D) Bodhi Sattva (sales by Defendant Industrial Court L11, LLC). The foregoing allegations are based on comparisons of sales by Falcon and/or its subsidiaries and affiliates to the list of licensed marijuana buyers maintained by the State of California stating the dates when those buyers did or did not have licenses, and the information and belief that arises therefrom. Additional research concerning additional, potential, unlawful sales by Falcon (through and/or by its subsidiaries and/or affiliates) to buyers at times when they were not licensed to purchase marijuana are ongoing and these allegations will be supplemented with newly updated information when it becomes available. The omissions were misleading because, when

-60-

coupled with Falcon's representations alleged herein, they caused Harvest to believe in the absence of the omitted facts, which were, in fact, not absent. These omitted facts would have, if disclosed by Falcon, significantly altered the total mix of information made available to Harvest.

    ii.    that Falcon has a history of violating CBCC regulations and federal law given its history of transportation of large quantities of marijuana across state lines, as alleged in the whistleblower complaint, and as reflected in and based on information and documentation attached to the whistleblower complaint at Exhibit 1 thereto. The omissions were misleading because, when coupled with Falcon's representations alleged herein, they caused Harvest to believe in the absence of the omitted facts, which were, in fact, not absent. These omitted facts would have, if disclosed by Falcon, significantly altered the total mix of information made available to Harvest.

    iii.    That the IBS Representation, the NUL Representation, the Compliance with Laws Representation, and the Books and Records Representation were materially misleading, based on the foregoing. The omissions were misleading because, when coupled with Falcon's representations alleged herein, they caused Harvest to believe in the absence of the omitted facts, which were, in fact, not absent. These omitted facts would have, if disclosed by Falcon,

significantly altered the total mix of information made available to Harvest.

178.   Scienter: Falcon's misrepresentations of material fact and omissions of material fact were made orally and approved by the signatures of control persons and Defendants James Kunevicius and Edlin Kim, who represented to Harvest that they are the long time operators of Falcon and its subsidiaries, involved directly in its growth and development, knowledgeable about all of its business practices and activities and financial results, and responsible for overseeing all aspects of Falcon's business. Edlin Kim has specifically orally represented to Harvest personnel that Falcon's financials are "the best" and that he has reason to know that because he has worked on them extensively himself. Based on the foregoing, Falcon acted with scienter in making the material misrepresentation of fact and omissions of material fact alleged herein.

179.   Connection with the purchase or sale of a security: the consideration (Harvest stock) provided in the Merger Agreement (an investment contract) is a security, and the Promissory Notes issued by Defendants, or some of them, to Plaintiffs, or some of them, are securities (investment contracts) in that they reflect the investment of money (the loans) with the expectation of profit (Harvest expected the value of Falcon's business to increase), from the undeniably significant efforts of others (Falcon and its subsidiaries and affiliates and control persons). The above-referenced, actionable representations and warranties were made by Falcon in connection with the sale of Harvest stock and the Promissory Notes.

180.   Transaction and loss causation: Harvest specifically relied on the truth of the material misrepresentations and the absence of omissions of material fact alleged herein above when it entered into the Merger Agreement, entered into the Amendment to the Merger Agreement, and when it acted in conformity with the Merger Agreement as amended.

-62-

Reliance on the foregoing led directly and proximately to the following nexus with Harvest's damages: once Harvest executed the Merger Agreement, it was required to perform thereunder, which confirmed the loan requirements alleged herein, and other obligations alleged herein, imposed upon Harvest. As a direct and proximate result and cause of Harvest's performance under the Merger Agreement, as amended, and the Control Person Transaction, it has been economically harmed.  The Merger Agreement as amended called for it to perform thereunder by expending resources to perform, to advance over $47 million in loaned funds, to pay $4.1 million in the Control Person Transaction, and to otherwise subject itself to the terms and conditions of the Merger Agreement, as amended, and the other requirements set forth in the documents memorializing the Contemplated Transactions. Accordingly, the above-alleged representations and omissions not only caused Harvest to enter into the transactions referenced above, but also directly caused the precise losses experienced by Harvest as a result of its compliance with the Merger Agreement, as amended. Harvest's losses are attributable directly to Falcon's wrongdoing, not to separate or intervening forces or factors.

181.   Economic loss: Harvest's economic losses are what was caused by it entering into the Merger Agreement, as amended, and related agreements: the loans made pursuant to the Promissory Notes, the funds paid out pursuant to the Control Person Transaction and the expenditures reasonably required for Harvest to enter into those agreements and to comply with its obligations thereunder.

182.   Contrary stipulations void: to the extent that Falcon asserts that this claim and any remedies sought hereunder is or are barred, restrained, limited or precluded in any way by the Merger Agreement or any other agreement, such assertion is contrary to and barred by ARS §44-2000.

1

**Seventh Claim for Relief**

**Control Person Liability Under Arizona Securities Act, ARS §44-1999**

2

3    183.    Plaintiffs reallege and incorporate by reference all paragraphs of the Amended

4    Complaint herein.

5    184.    This is a supplemental jurisdiction claim made against James Kunevicius and

6    Edlin Kim and is intended to be pursued in the Pending Arbitration.

7    185.    Defendants James Kunevicius and Edlin Kim are, by virtue of their positions

8    and titles with Falcon and its subsidiaries and affiliates, control persons as they have the power

9    and authority to cause Falcon to act or refrain from acting and, here, caused Falcon to make

10    the material misrepresentations of fact and omissions of material fact.

11    186.    As control persons, they are liable to the same extent as is Falcon for the

12    misrepresentations and omissions alleged herein.

13    187.    Contrary stipulations void: to the extent that Falcon asserts that this claim and

14    any remedies sought hereunder is or are barred, restrained, limited or precluded in any way

15    by the Merger Agreement or any other agreement, such assertion is contrary to and barred by

16    ARS §44-2000.

17    188.    Plaintiffs reserve the right to seek further amendment of their claims and

18    allegations.

19    WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

20    A. Make and promptly issue an Order, pursuant to 9 U.S.C. §4, and the

21    arbitration clauses quoted or referenced above, as well as alternatively under

22    the doctrines of agency, equitable estoppel and/or third party beneficiary

23    law, or other applicable law, compelling all Defendants to arbitrate the

24

25

26

-64-

claims summarized above in this Petition and Notice of Dispute, in the Pending Arbitration; and,

B. Make such other orders and rulings in furtherance and aid of the order compelling arbitration requested herein above.

Respectfully submitted this 7th day of February, 2020.

By: */s/ Paul A. Conant*
Paul A. Conant, 012667
**CONANT LAW FIRM, PLC**
2398 East Camelback Road #925
Phoenix, Arizona 85016-9002
Telephone: 602.508.9010
Facsimile:  602.508.9015
Email: docket@conantlawfirm.com